LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Khari Alexander and Amanda Green Alexander were married in October 2001, and separated in March 2009. One child *698 was born of the marriage. Amanda filed for divorce in the Hinds County Chancery Court after she suspected Khari was having an extra-marital affair. The chancellor found Amanda failed to prove adultery, but he granted a divorce based on habitual cruel and inhuman treatment.
¶ 2. Khari now appeals, asserting the following issues: (1) the chancellor was biased; (2) the chancellor abused his discretion and applied an erroneous legal standard in granting the divorce based on habitual cruel and inhuman treatment; and (3) the award of attorney’s fees was not supported by the record. We find reversible error as to issues two and three.
FACTS
¶ 3. Amanda accused Khari of adultery after discovering e-mails from other women on his computer. Khari admitted to being attracted to other women and having relationships with women other than his wife, but he denied that any of the relationships were sexual in nature. He wrote some of these women love poems. Khari admitted to being alone with another woman in a hotel room at night, but he denied that he committed adultery. Reverend Melvin Chapman testified he spoke with Khari about his relationship with Amanda. According to Chapman, Khari had an encounter with a female in which he put on a condom, but Khari insisted that he and the female did not have intercourse. Chapman testified that he did not believe Khari.
¶ 4. Amanda testified that, during the marriage, Khari would threaten her and use profane language. Amanda stated on one occasion, when Khari became violent, she attempted to call the police, but Khari slapped the phone away from her. Amanda tried to run to a neighbor’s house, and Khari chased Amanda down the street. She eventually fled in her car. On another occasion, Khari took Amanda’s keys out of her car while he was picking their child up for visitation. Amanda sought the help of law enforcement to get her keys back.
STANDARD OF REVIEW
¶ 5. “A chancellor’s findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, [was] clearly erroneous!,] or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶8) (Miss.2002) (internal and citations quotations omitted).
DISCUSSION
I. HABITUAL CRUEL AND INHUMAN TREATMENT
¶ 6. Khari argues the chancellor erred in granting Amanda a divorce based on habitual cruel and inhuman treatment. First, Khari asserts that Amanda only pled for a divorce based on adultery. Second, he argues that even if habitual cruel and inhuman treatment was pled, it was not proven.
¶ 7. At the conclusion of the divorce proceedings based on adultery, the chancellor made the following statement:
THE COURT: All right. We are to the end of the case. I have heard all the testimony pertaining to the charged grounds for divorce, and I think particularly as to the grounds for adultery, uncondoned adultery, that the plaintiff has not met her proof. She has requested in an amended complaint for a divorce on the grounds of irreconcilable differences, but she’s prayed for a divorce on the grounds of habitual cruel and inhuman treatment. That’s not been charged. I’m helping her, I know, *699 [Khari’s counsel], but under the new rules an amendment can be made right up to the final order. And, [Amanda’s counsel], if you will conform to the statute and the rules, I can possibly grant a divorce on other grounds, but that’s as far as I can go with you. You have prayed for all three grounds but you haven’t charged that in the complaint.
Amanda’s attorney immediately made an oral motion to modify the complaint to include habitual cruel and inhuman treatment. Khari’s attorney objected on the ground that he had no notice that habitual cruel and inhuman treatment was being pled. His objection was overruled, and Amanda was granted a divorce based on habitual cruel and inhuman treatment.
¶ 8. Mississippi Rules of Civil Procedure Rule 15(b) states that “when issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.” We find the ground of habitual cruel and inhuman treatment was not pled by express or implied consent of the parties. The bulk of the testimony in this case centered around Khari’s e-mails to other women from his personal computer. Acts of adultery may be used as a factor to prove habitual cruel and inhuman treatment. Fisher v. Fisher, 771 So.2d 364, 368 (¶ 13) (Miss.2000). However, the chancellor found Amanda failed to prove adultery.
¶ 9. Further, even if habitual cruel and inhuman treatment was tried by express or implied consent of the parties, the evidence does not support a divorce on this ground. In order to establish the basis for a divorce on the ground of habitual cruel and inhuman treatment, the claimant must show by a preponderance of the evidence conduct that:
either endangerfs] life, limb, or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.
S. Hand, Mississippi Divorce, Alimony and Child Custody § 4-12 (2d ed. Supp.1991); Gardner v. Gardner, 618 So.2d 108,113-14 (Miss.1993). A causal connection between the treatment and separation must exist. Foumet v. Foumet, 481 So.2d 326, 329 (Miss.1985). “It is an extreme set of facts that will prove a divorce based upon habitual cruel and inhuman treatment.” Moses v. Moses, 879 So.2d 1043, 1047 (¶ 9) (Miss. Ct.App.2004) (quoting Keller v. Keller, 763 So.2d 902, 908 (¶29) (Miss.Ct.App.2000)).
¶ 10. Amanda testified on cross-examination as to two incidents during the marriage: once when she fled the marital home and once when Khari came at her forcefully. She testified Khari came home late one night in 2003 and tried to talk to her. When she would not get up, he pulled the covers off the bed and used vulgar language. She attempted to call the police, but Khari knocked the phone out of her hand, and the phone hit her face. He chased her out of the house, and she fled in her car to her brother’s home. Amanda was not sure when the second incident occurred. She testified they were living in Rankin County at the time, and it may have been in 2007. She stated: “He came towards me in a very forceful nature and began shouting and screaming at me. He ... referred to me for the first time I think I’ve ever been referred to, certainly by him, as a b-, and that didn’t go over very well.” She testified he did not physically touch her. She later sought a temporary restraining order.
*700 ¶ 11. When asked during trial what ground she was alleging in her complaint for divorce, Amanda responded “adultery.” When asked why she and Khari separated, Amanda responded: “I discovered that he had in fact had inappropriate relationships with other women during our marriage.” The Mississippi Supreme Court stated in Foumet that “[t]here is a necessity for [a] causal relationship [between the cruel treatment and separation] to be proved when relying on the ground of habitual cruel and inhuman treatment, and it must be related in point of time to the separation.” Foumet, 481 So.2d at 329. Later cases have held that this is not to be interpreted as a strict requirement that a specific act cause the separation. Peters v. Peters, 906 So.2d 64, 70 (¶ 24) (Miss.Ct.App.2004). Instead, the claimant must show “habitual or continuous behavior over a period of time, close in proximity to the separation, or continuing after a separation occurs” in order to prove habitual cruel and inhuman treatment. Id. (quoting Richard v. Richard, 711 So.2d 884, 890 (¶ 23) (Miss.1998)).
¶ 12. We cannot find Amanda proved the ground of habitual cruel and inhuman treatment. The evidence presented by Amanda focused on adultery. It was only during cross-examination that the other incidents were mentioned. We find the chancellor erred in granting a divorce based on habitual cruel and inhuman treatment as his findings were not supported by substantial evidence. We reverse the judgment of the chancellor and remand this case for a new trial.
II. ATTORNEY’S FEES
¶ 13. The chancellor ordered Khari to pay Amanda’s $31,705.45 in attorney’s fees. Khari argues this award should be overturned because the chancellor failed to make any findings of fact regarding Amanda’s inability to pay the fees or the reasonableness of the fees.
¶ 14. “An award of attorney[’s] fees is a matter largely within the sound discretion of the chancellor.” Dickerson v. Dickerson, 34 So.3d 637, 648 (¶ 43) (Miss. Ct.App.2010) (citing Smith v. Smith, .614 So.2d 394, 398 (Miss.1993)). “Attorney[’s] fees should only be awarded in an amount that compensates for services rendered.” Id. at (¶ 44) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)). The factors to be analyzed in determining whether to award attorney’s fees include: (1) “the relative financial ability of the parties;” (2) “the skill and standing of the attorney employed,” (3) the novelty and difficulty of issues in the case, (4) the responsibility required in managing the case, (5) “the time and labor required,” (6) “the usual and customary charge in the community,” and (7) whether the attorney was precluded from undertaking other employment by accepting the case. McKee, 418 So.2d at 767.
¶ 15. The testimony showed Khari earned approximately $90,000 a year; however, Khari did not file a financial statement pursuant to Uniform Chancery Court Rule 8.05. Amanda asserts that her inability to pay her attorney’s fees was proven because the chancellor found her household expenses exceeded her income. The chancellor made no findings of fact on the issue of her inability to pay or Khari’s ability to pay. An itemized bill from Amanda’s attorney is included in the record; however, the chancellor did not examine the reasonableness of the fees. Before attorney’s fees are awarded, the chancellor must determine if the fees were fair, reasonable, and necessary. Dickerson, 34 So.3d at 648 (¶ 44) (citing McKee, 418 So.2d at 767). Since the chancellor failed to make findings pursuant to the *701 McKee factors, we also reverse and remand on this issue.
¶ 16. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
GRIFFIS, P.J., ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLTON, J. IRVING, P.J., BARNES AND MAXWELL, JJ., NOT PARTICIPATING.