FAIR, J.,
for the Court:
¶ 1. Eighteen-year-old Lacey Wilhite was permanently disabled in an automobile accident. Her divorced parents each sought a guardianship or conservatorship, and the father ultimately prevailed. The mother’s attorney, Tammy Woolbright, filed an attorney’s lien against the proceeds of a settlement of Lacey’s claims stemming from the accident. The chancery court ultimately awarded Woolbright $2,500 for her work on Lacey’s behalf, and Woolbright appeals from that judgment, contending she should have received more. We can find no basis to interfere with the exercise of discretion by the chancellor and increase the award, so we affirm.
FACTS
¶ 2. On August 16, 2008, Lacey was thrown from her vehicle after a collision with a drunk driver. She suffered permanent debilitating brain injuries that left her “neurologically devastated” and totally dependent on the care of others. Her mother, Celeste Sloan, had custody at the time of the accident, but Lacey had actually been living with her father for several years. Sloan, through her attorney, Wool-bright, filed a petition for guardianship on September 24, 2008. A short time later, Lacey’s father, Rodford Wilhite, responded with a counter-petition. He also sought custody of Lacey in a separate proceeding. Rodford ultimately prevailed in both actions, with the chancery court appointing him guardian/conservator approximately two years after the accident. The court then entered an order approving a 25% contingency fee contract with Rodford’s attorney, Will Ford.
¶ 3. The court was later presented with a settlement offer from the insurance carrier of the other driver, Nationwide, for the policy limits of $100,000. Also before it were Woolbright’s attorney’s lien and a subrogation claim by Lacey’s medical insurance carrier. The chancellor approved the settlement, denied the subrogation claim, and ordered a separate hearing on the issues of Ford’s fee and Woolbright’s lien.
¶ 4. The chancery court found that Ford was largely entitled to collect his 25% contingency fee. Further, although Wool-bright had a contract with Lacey’s mother and had devoted significant time and effort *304 to pursuing Lacey’s claims, Lacey’s mother did not have a guardianship, and Wool-bright had never sought or received court approval to represent Lacey. For that and other reasons, the chancellor concluded Woolbright was entitled to $2,500, in quantum meruit, which was charged against Ford’s fee (leaving him with $22,500).
DISCUSSION
1. Ford’s Contract and Fees
¶ 5. Woolbright’s first two issues assert deficiencies in the chancery court’s supervision of Lacey’s estate, so we shall address them together. She argues that Ford was required to file a motion requesting approval of the contingency fee contract before the trial court could enter an order approving it. She also contends Ford failed to comply with Uniform Chancery Court Rule 6.12, arguing among other things that Ford’s written petition failed to outline the work he did on the case and failed to disclose a prior settlement offer that had been made to Woolbright.
¶ 6. Rule 6.12 states in relevant part:
Every petition by a fiduciary or attorney for the allowance of attorney’s fees for services rendered shall set forth the same facts as required in Rule 6.11, touching his compensation, and if so, the nature and effect thereof. If the petition be for the allowance of fees for recovering damages for wrongful death or injury, or other claim due the estate, the petition shall show the total amount recovered, the nature and extent of the service rendered and expense incurred by the attorney, and the amount if any, offered in compromise before the attorney was employed in the matter. In such cases, the amount allowed as attorney’s fees will be fixed by the Chancellor at such sum as will be reasonable compensation for the service rendered and expense incurred without being bound by any contract made with any unauthorized persons. If the parties make an agreement for a contingent fee the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor.
¶ 7. While we agree that Ford’s written filings fail to fully comply with the Uniform Chancery Court Rules, we find no error because all of the required information was presented to the chancery court during the hearing. Ford testified at some length to “the nature and extent of the service rendered and expense incurred,” his experience, the novelty of the legal questions involved, and the reasonableness of his fee; and Woolbright informed the court of the prior settlement offer made to her. Both agreed that the case involved more than simply accepting a settlement for the policy limits; among other things, Lacey’s attorney had to investigate other potential causes of action on Lacey’s behalf, follow up on the criminal prosecution of the other driver, and contest various subrogation claims. Indeed, Woolbright herself argued that her 33.8% contingency fee contract with Lacey’s mother and the 125-plus hours she had devoted to the case were reasonable and entitled her to fees exceeding those awarded to Ford. The chancellor found that Ford’s fee of 22.5% was fair and reasonable. Given the evidence before the chancellor, we cannot find any error in his approving this fee.
2. Woolbright’s Quantum Meruit Claim
¶ 8. Woolbright acknowledges that her contract with Lacey’s mother is unenforceable. But she contends that, under a quantum meruit theory, she is entitled to compensation from Lacey’s estate far ex- *305 eeeding the $2,500 awarded by the chancery court.
¶ 9. The “essential elements of recovery under a quantum meruit claim” are as follows:
(1) valuable services were rendered or materials furnished;
(2) for the person sought to be charged;
(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
(4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.
Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 514-15 (1156) (Miss.2007). “Quantum meruit recovery is a contract remedy which may be premised either on express or implied contract, and a prerequisite to establishing grounds for quantum meruit recovery is [the] claimant’s reasonable expectation of compensation.” Id. at 514 (¶ 56) (citation and internal quotation marks omitted). A chancellor’s decision as to attorney’s fees in quantum meruit is reviewed only for an abuse of discretion; it will not be disturbed on appeal if it is supported by substantial evidence. Ownby v. Prisock, 243 Miss. 203, 208, 138 So.2d 279, 281 (1962).
¶ 10. The chancery court pointed out in its order that the fatal flaw in Woolbright’s quantum meruit claim against Lacey’s estate is the absence of a reasonable expectation of compensation from the estate. From the beginning, Woolbright knew Lacey’s parents were divorced and that there was a potential contest of Sloan’s petition for a guardianship. Of the more than 125 hours on Woolbright’s invoice, only 12.9 precede the filing of the guardianship contest. While Sloan continued pursuing Lacey’s claims, there was no evidence of any pressing need to do so before the resolution of the guardianship dispute; and a fair portion of the remaining hours invoiced relates only to the guardianship contest.
¶ 11. Woolbright’s argument is that her employment by Sloan gave her a reasonable expectation of compensation from the estate even if she had no enforceable contract. We do not agree. Sloan may have been a “natural guardian” of Lacey under Mississippi Code Annotated section 93-13-1 (Rev.2004), but the chancery court is the “superior guardian.” See Carpenter v. Berry, 58 So.3d 1158, 1163 (¶ 19) (Miss.2011). As the Mississippi Supreme Court detailed in Mississippi State Bar Association v. Moyo, 525 So.2d 1289, 1293-96 (Miss.1988), there are three ways to bind a minor in a settlement: (1) removal of the disability of minority, (2) the formal appointment of a guardian, and (3) the chancery court’s approval, without a guardianship, when the claim is worth $25,000 or less (Mississippi Code Annotated section 93-13-211 (Supp.2012)). It stands to reason that a parent who has no authority to bind her daughter’s estate in a settlement cannot bind the estate to an attorney’s fee contract, particularly when such a contract would have to be, but was not, approved by the chancery court. See UCCR 6.12. In Carpenter, 58 So.3d at 1163 (¶ 19) (citation omitted & emphasis added), the supreme court reiterated its longtime holding that:
Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irre-fragable by the provisions of our present *306 state constitution. It is not competent for the Legislature to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court andLGor the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by a waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct. All persons who deal with guardians or with courts in respect to the rights of infants are charged with the knowledge of the above principles, and act to the contrary thereof at their peril.
See also Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826-27, 138 So. 593, 595 (1932) (original source). Given the age and clarity of that pronouncement, we agree with the chancery court that Wool-bright did not have a reasonable expectation of compensation from Lacey’s estate.
¶ 12. Woolbright also contends that the chancellor’s decision to award her $2,500, 10% of Ford’s 25% contingency fee contract, was arbitrary. She points out that the chancery court cited In re Guardianship Estate of Baker, 31 So.3d 1285, 1289 (¶ 14) (Miss.Ct.App.2010), an attorneys’ fee dispute case where 10% of the total fees were awarded to one attorney in quantum meruit. Woolbright argues the chancellor awarded her 10% because that was how much was awarded in Baker.
¶ 13. Although we agree that it is not clear how the chancery court arrived at the $2,500 award, Ford points out that it could be interpreted as a rough approximation of the value of the 12.9 hours Wool-bright had in the case before the guardianship dispute. Woolbright testified that her hourly rate was $225; if the chancellor had decided a reasonable value for Wool-bright’s services was $200 per hour, 12.9 hours would be $2,580. Given that there is substantial evidence to support the $2,500 figure, and the questionable reasonableness of Woolbright’s expectation of any compensation whatsoever, we do not think the failure to make a larger award is an abuse of discretion.
¶ 14. This issue is without merit.
¶ 15. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.