# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00401-COA

| | |
|---|---|
| R. DON WILLIAMS, INDIVIDUALLY, R. DON WILLIAMS D/B/A DON WILLIAMS REALTY, AND QUADRANGLE PROPERTIES, INC. | APPELLANTS |

v.

| | |
|---|---|
| THE ESTATE OF HAYWOOD F. ELLIS, SR., AND ELLIS REALTY, INC. | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 03/07/2014 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JANICE T. JACKSON |
| ATTORNEYS FOR APPELLEES: | CONNIE MARIE SMITH |
| | RICHARD ALLEN EISENBERGER JR. |
| | JOHN HOWARD SHOWS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | FOUND APPELLANTS OWE TO APPELLEE $48,166.67 FOR PURCHASE PRICE LISTED IN PARTNERSHIP AGREEMENT, AND APPELLANTS OWE TO APPELLEE $19,737.12 FOR MANAGEMENT FEE OF OFFICE BUILDING UNDER PARTNERSHIP AGREEMENT |
| DISPOSITION: | AFFIRMED -10/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     This case arises from a dispute regarding a partnership agreement. H.F. "Woody" Ellis and Ellis Realty Inc. (Ellis) filed a complaint against R. Don Williams, individually, R. Don Williams d/b/a Don Williams Realty (Williams), and Quadrangle Properties Inc.

(Quadrangle Properties). Williams then filed a counterclaim against Ellis. Following a two-day trial in the Hinds County Chancery Court, the chancery court entered an order and opinion on December 22, 2013. On March 7, 2014, an amended order and opinion was entered, in which the chancery court found that Williams owed Ellis management fees in the amount of $19,737.12. The chancery court further found that Williams owed Ellis $48,166.67 for funds Ellis paid to Williams pursuant to their partnership agreement, which was rescinded by the chancery court. Aggrieved, Williams filed this appeal. Finding no error, we affirm.

**FACTS**

¶2.     On March 19, 2009, Ellis and Williams entered into a partnership agreement relating to the ownership and management of the Quadrangle Office Complex (Quadrangle). The Quadrangle is a commercial building owned by Quadrangle Properties, and is located on Ridgewood Road in Jackson, Mississippi. Williams is the president, vice president, and director of Quadrangle Properties.

¶3.     The partnership agreement is a one-page document that was signed by both Williams and Ellis on March 19, 2009. The agreement provided the following:

> By mutual agreement between Don Williams DBA Don Williams Realty and H.F. Woody Ellis DBA Ellis Realty, H.F. Woody Ellis hereby agrees to purchase 1/6th (16.67%) interest of the [Quadrangle] for the sum of Fifty[]Thousand Dollars ($50,000.00). Don Williams will retain 5/6ths (83.33%) interest. Partners will have all rights and privileges pertaining to their respective interests.
>
> It is agreed that Ellis Realty will assume management of said property at the earliest date of their choosing with a management fee of 10% of gross rent collected per month. Ellis Realty will occupy office space in said complex.

It is understood that all existing furniture per inventory sheet attached will remain the property of Don Williams with Ellis Realty granted full use of said inventory. Any property of Ellis Realty will be listed separately and given to Don Williams.

In the event of a profit or shortage each partner will either advance or receive an amount equal to their respective share.

It is agreed that Ellis Realty will diligently manage and professionally maintain [the] property, renting space when available.

All items of a major expense of $500 or more must be mutually discussed and agreed upon by both interests.

Agree[d] this 19th day of March, 2009.

¶4.    Upon execution of the partnership agreement, Ellis paid Williams $45,833.33. Ellis claims that he paid additional money towards the $50,000 in cash; however, he admitted at trial that he did not have any proof to show for it. Williams and Ellis also opened a bank account at Regions Bank under the name Quadrangle Properties. They deposited $10,000 into the account as "seed money," with Williams depositing $8,333.33 (five-sixths of $10,000) and Ellis depositing $1,666.67 (one-sixth of $10,000).

¶5.    On May 7, 2012, Ellis filed a complaint against Williams and Quadrangle Properties asking that Williams be ordered to transfer a one-sixth interest in Quadrangle to Ellis without any liens or encumbrances. Upon receipt of the one-sixth interest, Ellis then asked the chancery court to order a sale of the Quadrangle since it could not be divided. Ellis also sought $35,716, which he claimed he was owed due to management fees, expenses for which he had not been reimbursed, and interest. In the alternative, Ellis asked that if the chancery court did not specifically enforce the partnership agreement, that it be rescinded and Ellis be

restored to his pre-agreement status.  Finally, Ellis requested attorney's fees and damages because he claimed that he was a vulnerable adult.

¶6.	Williams and Quadrangle responded to Ellis's complaint with their answer and counterclaim.  The counterclaim asserted that the document had been erroneously titled "Partnership Agreement" because the parties were not entering into a partnership.  Williams argued that Ellis breached the terms of the contract by not paying the entire $50,000 for his one-sixth interest, and by using Quadrangle's funds to make various unauthorized payments that exceeded $500.  Williams claimed that Ellis had failed to pay monthly rental costs for his office space at the Quadrangle, and had failed to pay shortages for Quadrangle's operations since January 2012.  Williams further maintained that Ellis breached the contract by failing to fulfill his management duties.  Finally, Williams asserted that he was owed fiduciary duties by Ellis and that those were breached.

¶7.	Based on the foregoing, Williams sought a judgment to cover the following: the $3,500 unpaid balance due from the $50,000; all unauthorized expenditures that exceeded $500; $30,400 for the cost of office space, office equipment, and telephone service for the period of April 2009 through June 2012; $8,238.50 in expenses that Ellis paid to others for duties he was expected to perform in order to earn his 10% management fee; damages arising from the alleged breach of fiduciary duties owed to Williams; all sums due from Ellis representing the alleged shortages in the operating cost of Quadrangle; cancellation of the alleged debt obligation; attorney's fees; and pre-judgment and post-judgment interest.

¶8.	Following a two-day trial in June 2013, the chancery court rescinded the partnership

4

agreement because she found that the "parties engaged in a course of dealing that included various decisions based on ambiguous understandings that call[ed] into question even simple language used in the [p]artnership [a]greement but that also vitally impaired true performance of the contract terms." The chancery court cited the fact that the primary reason for the existence of the contract was to transfer a one-sixth interest in Quadrangle to Ellis, and that the transfer never occurred. The chancery court then found the following in terms of quantum meruit relief:

(1)      Williams owed Ellis $19,737.12 in management fees;

(2)      Williams owed Ellis $48,166.67 for the funds Ellis paid to Williams for the purpose of purchasing 1/6th interest in Quadrangle;

(3)      Williams's request to obtain past rental payments from Ellis was denied;

(4)      Williams's request for past shortages from Ellis was denied;

(5)      No reimbursement for expenses was due to or due from either party; and

(6)      Ellis's request for repayment of a promissory note was denied.

¶9.      Aggrieved, Williams filed this appeal. Finding no error, we affirm.

**STANDARD OF REVIEW**

¶10.      This Court will not reverse a chancery court's findings "when supported by substantial evidence unless the chancery court abused his or her discretion, was manifestly wrong, was clearly erroneous, or an erroneous legal standard was applied." *Alexander v. Alexander*, 95 So. 3d 696, 698 (¶5) (Miss. Ct. App. 2012) (citing *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶8) (Miss. 2002)).

**ANALYSIS**

¶11. The chancery court found that the partnership agreement should be rescinded due largely in part to the fact that the one-sixth interest in Quadrangle was never transferred to Ellis. The Mississippi Supreme Court has held the following with regard to rescinding contracts:

> The termination of a contract is an extreme remedy that should be sparsely granted. Termination is permitted only for a material breach. A breach is material when there is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose, or when the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract.

*J.O. Hooker & Sons Inc. v. Roberts Cabinet Co.*, 683 So. 2d 396, 402-03 (Miss. 1996) (citation and internal quotation marks omitted). We agree with the chancery court that since the primary purpose of the partnership agreement, i.e., the transfer of the one-sixth interest to Ellis, was never fulfilled, the partnership agreement should be rescinded.

> 1. *Whether the chancery court erred in its application of quantum meruit by awarding a 10% management fee to Ellis, less some payments to others for performing duties.*

¶12. Williams first argues that the chancery court erred in its application of quantum meruit by awarding Ellis $17,510.75 in management fees. "Quantum meruit recovery is a contract remedy which may be premised either on express or implied contract, and a prerequisite to establishing grounds for quantum meruit recovery is the claimant's reasonable expectation of compensation." *In re Wilhite*, 121 So. 3d 301, 305 (¶8) (Miss. Ct. App. 2013) (quoting *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 514-15 (¶56) (Miss. 2007)).

¶13. The partnership agreement expressly stated that Ellis would "assume management of

6

[Quadrangle] at the earliest date of their choosing with a management fee of 10% of gross rent collected per month." The chancery court found the amount of rent received from April 2009 through August 2012 to be $404,601.22. Therefore, pursuant to the terms of the partnership agreement, Ellis would have been entitled to management fees in the amount of $40,460.12. However, Williams argued that Ellis paid Robert Ellis, Cindy Ellis, Warren Ellis, Penny Wariner, Ron Scarborough, and Al Dahduh to perform his management duties. The chancery court agreed that the $20,723 that Ellis paid Robert Ellis, Cindy Ellis, Warren Ellis, Penny Wariner, and Ron Scarborough should be offset from the total amount owed to Ellis; but the chancery court held that because Al Dahduh was working for Williams, Williams was not entitled to an offset for the fees paid to him. Accordingly, the chancery court found that Williams owed Ellis a total of $19,737.12 in management fees.

¶14. We find that the chancery court was well within its discretion to find that Williams owed Ellis $19,737.12 in management fees. This issue is without merit.

2. *Whether Ellis breached a duty owed to Williams.*

¶15. Williams argues that "Ellis expanded his privileges beyond the expectation of . . . Williams and without notifying . . . Williams by paying family, third parties, initiating telephone services not needed previously and by failing to pay for the new office space he took under his possession and control even with a paying tenant in the space." In addition, Williams claims that Ellis did not inform Williams that he had loaned $3,000 to Quadrant with a note signed solely by Ellis.

¶16. Williams argues that Ellis could not have had a "reasonable expectation that

7

Quadrangle would pay for telephone service that it didn't have prior to his entry without the agreement of . . . Williams." Williams maintains that while the partnership agreement allowed Ellis to occupy space at the Quadrangle, it made no reference to the issue of rental costs, utilities, or new telephone service. Williams argues that with regard to Ellis's allowed office space referenced in the partnership agreement, Williams had been referring to a specific office upstairs that was adjacent to his. Instead, Ellis moved into an office space downstairs that was being rented by a tenant. Consequently, Williams asserts that Ellis was responsible for the cost of the fair market rental and utilities.

¶17. The chancery court found that Williams was not entitled to be reimbursed for office rent or the new telephone service. Again, the chancery court properly looked to the language in the partnership agreement, which provides that "Ellis Realty will occupy office space" in Quadrangle. Indeed the partnership agreement does not specify that Ellis was expected to occupy an office upstairs. We find no error with the chancery court's finding that Williams did not improperly occupy the downstairs office space. The partnership agreement did not mandate or prohibit Williams from occupying specific spaces in the building. Hence, Ellis cannot use the partnership agreement for recovery of fair market rent or utilities.

¶18. The partnership agreement further states that "[a]ll items of a major expense of $500 or more must be mutually discussed and agreed upon by both interests." We agree with the chancery court that a telephone service would not be considered a major expense, as it would not cost more than $500. As such, we find that the chancery court's findings are based on substantial evidence and should not be disturbed.

8

¶19.     With regard to the argument that Ellis owed Williams a duty, Williams does not cite any authority to support his position. "Mississippi Rule of Appellate Procedure 28(a)(6) requires an appellant's brief to contain the contentions of [the] appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." *Norwood v. Miss. Dep't of Emp't Sec.*, 105 So. 3d 408, 410 (¶5) (Miss. Ct. App. 2012). "Failure to cite any authority is a procedural bar, and a reviewing court is under no obligation to consider the assignment." *Id.* Accordingly, we decline to address Williams's assignment of error relating to any duty owed.

> 3.     *Whether the chancery court erred by crediting the $1,666.67 contributed to the Regions Bank account opened for Quadrangle toward the purchase price of $50,000.*

¶20.     Williams and Ellis deposited $10,000 in "seed money" into a bank account at Regions Bank on March 19, 2009. Williams deposited $8,333.33 (five-sixths of $10,000), and Ellis deposited $1,666.67 (one-sixth of $10,000). The chancery court looked at the language of the partnership agreement and determined that the parties had operated outside the four corners of the agreement with regard to the seed money, and consequently, she did not know the parties' intentions. She again applied the theory of quantum meruit to "equitably resolve this matter by restoring the parties to their original conditions." As a result, the chancery court ordered that Williams return to Ellis the $1,666.67.

¶21.     In "situations where there is no legal contract but where the person sought to be charged is in possession of money . . . which in good conscience and justice he should not retain . . . , the courts impos[e] a duty to refund the money . . . to the person to whom . . . it

ought to belong." *Ace Pipe Cleaning Inc. v. Hemphill Const. Co.*, 134 So. 3d 799, 806 (¶29) (Miss. Ct. App. 2014). We agree with the chancery court that, based on the theory of quantum meruit, Ellis was entitled to be reimbursed the $1,666.67 that he had deposited in the bank account.

> 4. *Whether the case should be remanded to the chancery court to determine the reasonable value of the services rendered by Ellis as a remedy or to determine the value added to the profitability of the Quadrangle or Quadrangle Properties as a remedy.*

¶22. Williams argues that the chancery court "erred in its application of the remedy and recovery of damages in quantum meruit and that the findings are against the overwhelming weight of the evidence." Williams does not elaborate as to what he believes would constitute a reasonable value of the services rendered by Ellis, nor does he cite any caselaw to support his proposition. Again, this Court has firmly established that "[f]ailure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment." *United Plumbing & Heating Co. v. Mosley*, 835 So. 2d 88, 92 (¶8) (Miss. Ct. App. 2002) (citation omitted). Furthermore, for the reasons stated throughout this opinion, we do not agree that the chancery court's findings were against the overwhelming weight of the evidence. This issue is also without merit.

> 5. *Whether the chancery court erred – not in rescinding the partnership agreement – but rather in rescinding it and then using its terms to fashion a quantum meruit remedy rather than the reasonable value of the services.*

¶23. Finally, Williams argues that the chancery court erred in rescinding the partnership agreement, but still using some of the terms to shape a quantum meruit remedy. We look

10

once again to this Court's definition of quantum meruit. This Court has defined quantum meruit recovery as "a contract remedy which may be premised either on [an] express or implied contract." *In re Wilhite*, 121 So. 3d at 305 (¶9) (citation omitted). "[A] prerequisite to establishing grounds for quantum meruit recovery is the claimant's reasonable expectation of compensation." *Id.* There are four essential elements of recovery under a quantum meruit claim:

(1) valuable services were rendered or materials furnished;

(2) for the person sought to be charged;

(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and

(4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by [the] person sought to be charged.

*Id.* (citing *Tupelo Redev.*, 972 So. 2d at 514-15 (¶56)).

¶24. We find that the chancery court properly applied the theory of quantum meruit. She referenced the parties' partnership agreement for the purpose of determining the parties' intentions and reasonable expectations in what they would be compensated. This issue is also without merit.

¶25. **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., BARNES, CARLTON, MAXWELL, JAMES AND WILSON, JJ., CONCUR. GRIFFIS, P.J., AND FAIR, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**