31 So.3d 1285 (2010)
In the Matter of the GUARDIANSHIP ESTATE OF Dylan N. BAKER, a Minor Child.
Jack W. Harang, Appellant
v.
Pat M. Barrett, Jr. and Charles Ian Kirtland, Appellees.
No. 2008-CP-01701-COA.
Court of Appeals of Mississippi.
April 6, 2010.
*1286 Jack W. Harang, Appellant, pro se.
Pat M. Barrett, Jr., Appellee, pro se.
Richard C. Fitzpatrick, Poplarville, Alfred Harry Davidson IV, attorneys for appellees.
Before MYERS, P.J., IRVING, GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court:
¶ 1. On March 20, 2002, Briana L. Kirtland was killed after an automobile in which she was a passenger collided with a train at a railroad crossing in Pearl River County, Mississippi. Briana was survived by her minor child, Dylan Baker, who was four years old when she died. In April 2002, Brian and Gina Baker (the Bakers), Briana's parents, filed a wrongful-death action in the Pearl River County Chancery Court on behalf of Dylan against Norfolk Southern Railroad Company (Norfolk).[1] They executed a contingency-fee contract with Jack Harang, a Louisiana attorney. Harang later associated Pat Barrett, Jr., a Mississippi attorney, into the case. Barrett did not have a contingency-fee contract with the Bakers, and all work conducted by him was done through his association with Harang pursuant to the contingency-fee contract executed by the Bakers with Harang.
¶ 2. In March 2007, the parties agreed to settle the case. The settlement was approved by the chancery court in August 2007. In May 2008, Barrett filed a motion for attorney's fees. Harang filed a motion in opposition, and in June 2008, he filed a motion for approval and recognition of the attorney's contingency-fee contract.
¶ 3. A hearing on the motion for attorney's fees and the opposition motion was conducted in May 2008. The chancery judge entered an order in July 2008 and awarded Barrett ninety percent of the total amount of the attorney's fees recovered in the case and awarded Harang ten percent of the attorney's fees recovered in the case. Aggrieved, Harang appeals asserting that the chancery court erred in deciding not to recognize the existing contingency-fee contract and awarding Barrett *1287 ninety percent of the total amount of attorney's fees. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 4. This Court applies a limited standard of review on appeals from chancery court. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). Great deference is given to the chancellor in his findings of fact, and we will not disturb those findings unless they are found to be manifestly wrong or clearly erroneous, or where the chancellor applied an incorrect legal standard. In re Allen, 962 So.2d 737, 741 (¶14) (Miss.Ct. App.2007) (citing In re Estate of Ladner, 909 So.2d 1051, 1054 (¶6) (Miss.2004)).

DISCUSSION
¶ 5. Harang argues that the chancery court erred in deciding that it did not have to recognize the existing contingency-fee contract and holding that only equitable principles control the division of attorney's fees. Harang asserts that the chancery court totally disregarded the provision of Rule 1.5(c) of the Mississippi Rules of Professional Conduct which requires that a contingency-fee agreement be in writing. Although it is not made clear in his brief, Harang appears to be asserting that the chancery court recognized an oral contingency-fee contract between Barrett and the Bakers. Harang contends that there is no such provision in the Code of Professional Conduct allowing an oral contingency-fee contract between a client and an attorney; thus, the chancery court was in error to recognize one and to award Barrett ninety percent of the attorney's fees. However, Harang later admits in his brief that Barrett had no oral contingency-fee contract with the Bakers.
¶ 6. Fee splitting between an attorney licensed to practice in Mississippi and an attorney not licensed to practice in Mississippi, but properly admitted pro hac vice, is governed by Rule 1.5(e) of the Mississippi Rules of Professional Conduct which provides, in pertinent part, that:
A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or, by written agreement each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable.
¶ 7. Harang, an attorney licensed to practice law in Louisiana, entered into a contingency-fee contract with the Bakers to pursue a wrongful-death suit against Norfolk. In preparation for this suit, Harang interviewed witnesses and performed an investigation of the underlying facts surrounding the accident. Harang, through his agent Richard H. Barker IV, then associated Barrett, a Mississippi attorney, into the case to assist with the suit.
¶ 8. The chancery court was provided copies of the correspondence between Barker and Barrett. The correspondence confirmed an agreement that Barrett would be associated with Harang as co-counsel; it provided that the work, expenses, and fees would be divided equally between the two of them. Barrett was given a retainer letter and a $250 firm check from Barker. The $250 check represented fifty percent of the $500 retainer fee that Harang and Barker had received from the Bakers to handle their adoption of Dylan. As evidenced from the exhibits Barrett provided in the record, after he accepted the role as Harang's co-counsel, Barrett spent a considerable amount of time and money in litigating the Bakers *1288 case. According to Barrett's summary of work done, he spent 726 hours and $32,528.94 on the case. From the record it appears that the $250 firm check from Barker to Barrett was the only money Barrett received. Barrett also provided the chancery court with correspondence he sent through certified mail to Harang where he explained that after several attempts to contact Harang for help with the litigation, Barrett had decided to continue litigating the case as if he were the only attorney retained by the Bakers. The chancery court was not provided with any evidence from Harang to dispute Barrett's assertion that he had made several attempts to contact Harang with no avail. The chancery court also was not provided with any evidence from Harang disputing the time and money Barrett spent litigating this case.
¶ 9. Barrett also provided an affidavit from Richard A. Follis, the attorney who represented Norfolk. Follis stated that to the best of his knowledge, the case was litigated extensively by Barrett. He also stated that while Barker and Harang were included as attorneys of record throughout the litigation, he never had any contact or telephone conversation with either of them, nor did he ever receive any correspondence from either of them pertaining to the substance of the litigation of the case. Follis summarized his affidavit by saying that to the best of his knowledge, neither Barker or Harang were ever directly involved in any component of the litigation between the Bakers and Norfolk.
¶ 10. Harang provided the chancery court with an affidavit from Michael B. Martz. Martz had previously served as general counsel for The Mississippi Bar for eight years, and at the time of his affidavit, he was in private practice with his primary focus being ethics, professional responsibility, legal malpractice, and attorney discipline. Martz has served as an expert in these areas. In his expert opinion, Martz stated that the chancery court should recognize the contract between the Bakers and Harang. Martz stated that there is written consent from the Bakers authorizing Harang and Barker to act on their behalf, but that there is no such written consent from the Bakers authorizing Barrett to act on their behalf except through the contract between the Bakers and Harang.
¶ 11. Although Barrett asserts that he performed more of the work and spent the majority of the money in this case, Martz stated that the assumption of joint responsibility does not require that the attorney be actively involved in providing legal services at every stage of the prosecution of the client's case. He also stated that joint responsibility does not necessarily require that the attorney participate in the decision-making process or the litigation of the case. Martz concludes that a division of attorney's fees on a quantum-meruit basis would not be equitable.
¶ 12. With regard to minors' matters in Mississippi, principles of equity govern. In Sunnyland Contracting Co. v. Davis, 221 Miss. 744, 756, 75 So.2d 638, 639 (1954), the court stated: "Where minors are involved, the courts must [necessarily] determine the fees; and any contract for fees does not bind the minors." In accordance with Sunnyland, this Court does not have to recognize the existing contingency-fee contract. Thus, only equitable principles control the division of attorney's fees in this case.
¶ 13. When looking to determine the equitable division of attorney's fees, *1289 this Court looks to Rule 1.5(a) of the Mississippi Rules of Professional Conduct, which provides that "a lawyer's fee shall be reasonable." Rule 1.5(a) sets out several factors to be considered in determining reasonableness:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.
In McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), the supreme court held as follows in regard to attorney's fees:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
The court went on to say: "[W]e are also of the opinion the allowance of attorney['s] fees should be only in such amount as will compensate for the services rendered. It must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary." Id. It is clear from the record that Barrett performed the majority of the work in this case; therefore, he should be awarded attorney's fees that reflect such.
¶ 14. This Court finds that the judgment of the chancery court to award Barrett ninety percent of the total amount of attorney's fees and to award Harang ten percent of the total amount of attorney's fees is proper. Therefore, we affirm the judgment of the chancery court.
¶ 15. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LEE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KING, C.J.
LEE, P.J., dissenting:
¶ 16. With respect for the majority, I must dissent. The award of only ten percent of the total attorney's fees to Jack Harang was patently unfair and should be reversed. While I acknowledge that Harang did not fulfill his end of the bargain with attorney Pat Barrett, Jr., Harang was the referring attorney and should be compensated for his services in procuring the case.
¶ 17. It must be kept in mind that Barrett had no contractual relationship with Brian and Gina Baker (the Bakers); *1290 thus, all actions taken by Barrett were pursuant to the agreement made between Harang and the Bakers. Barrett did not procure the clients, and he had no connection to this case other than the association by Harang. The correspondence between the attorneys stated that the work, costs, and fees were to be split equally. A division of fees between a referring attorney who himself has been retained on a contingency basis and the attorney who handles the case will rarely, if ever, be quantum meruit. The referring attorney might not do a significant amount of work on a case; yet, the referring attorney procured the case, and that action has value. Harang was included as an attorney of record throughout the litigation. Harang still assumed joint responsibility of the case, even though he did not participate in accordance with their agreement of taking on fifty percent of the work and expense.
¶ 18. The majority cites Sunnyland Contracting Co. v. Davis, 221 Miss. 744, 756, 75 So.2d 638, 639 (1954) for the proposition that courts are not bound to follow contingency-fee contracts with minors. The majority also cites to McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), which provides a list of factors to use in determining the amount of attorney's fees that should be awarded. I find that the majority's reliance on Sunnyland and McKee is misplaced. These cases, which hold that attorney's fees should be determined in an equitable manner, only refer to the fees a client is to pay his or her attorney. Neither case gives any guidance as to the division of fees between a referring attorney and the attorney who actually sees the case to fruition. I agree with the opinion of Harang's expert witness, Michael B. Martz. Martz concluded that since there was no consent from the Bakers authorizing Barrett to act on their behalf, except through the contract between the Bakers and Harang, the chancery court should have honored the agreement between the attorneys to split the fee.
¶ 19. It is a very common practice for attorneys to associate other attorneys to handle cases that they themselves may not be able to handle because they practice in another state, may not possess the necessary expertise, or for a variety of other reasons. When an attorney accepts a referral, he or she understands the basis on which they have accepted the case. As in any contingency-fee arrangement, sometimes the attorney is well rewarded and sometimes not so well. It is not out of the question that some associations or referrals are done on a handshake, with no written agreement.
¶ 20. In this case, Barrett would have never had the case had it not been for Harang. While Barrett may have advanced all of the costs contrary to the written agreement, he was reimbursed by the court for every cent he expended. I am reminded of the old adage, "little pigs get fat, hogs get slaughtered."
¶ 21. Mississippi has become well known, if not infamous, for fee disputes among lawyers. See Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 804 So.2d 1000 (Miss.2001). Barrett has converted this case to quantum meruit because Harang did not do half the work or advance half the costs. When you take on an association such as this, you take the bitter with the sweet. Notwithstanding the communication between the attorneys which stated that the work, costs, and fees would be divided equally, it was not practical for Barrett to believe that the work would be divided fifty-fifty. Harang was out of state; thus, it was not practicable *1291 for him to do fifty percent of the work as he was not licensed in Mississippi. That is why he associated Barrett. In any law practice, a crucial factor to the business is bringing in cases. This is commonly known as "rainmaking." A lawyer may have great legal abilities, but without any cases to work on, he or she would profit nothing. While a definite amount cannot be determined, it may very well be that fifty percent of the value of a case should be attributed to the rainmaker.
¶ 22. Barrett did not take this case on a quantum-meruit basis. He knew Harang could not perform fifty percent of the actual work because he was out of state. Therefore, because I find the division of fees between the two attorneys was unfair, I would reverse and remand this case back to the chancellor for reconsideration of the division of attorney's fees.
KING, C.J., JOINS THIS OPINION IN PART.
NOTES
[1] The Bakers are the parents of Briana L. Kirtland and the maternal grandparents of Dylan Baker. Following Briana's death, the Bakers adopted Dylan, but the Bakers later divorced. Brian Baker was awarded joint legal custody and sole physical custody of Dylan.