: CARLTON, J.,
for the Court:
¶ 1. This case arises from a wrongful-death action brought in the Jackson County Chancery Court resulting from the death of sixteen-year-old Dane Eubanks. Dane died as the result of an automobile accident in 2006, and his mother, Cecilia Borries (hereinafter referred to as the Ad-ministratrix) was named administratrix of his Estate.
¶2. As a procedural matter, we first recognize that the record reflects that pri- or to the wrongful-death .action, the Ad-ministratrix entered into a legal contract, which was approved by the chancellor, with attorney David E. Kihyat Sr. to represent Dane’s Estate. Kihyat, on behalf of the Administratrix, filed a petition for probate of the Dane’s Estate in February 2007, stating that Dane was survived by the Administratrix; his father, David Eu-banks Sr.; his brother, Seth Eubanks; and his half-brother, Aiden Borries. The Administratrix then filed a motion to preclude Dane’s biological father, David Sr., from receiving any damages recoverable for Dane’s death, since David Sr. had failed to support Dane or engage in a relationship with Dane since Dane was four years old.
¶ 3. The chancellor ultimately ordered that David Sr. would not share in any wrongful-death proceeds. Kihyat then pursued two wrongful-death actions on behalf of the Administratrix and the Estate, which we discuss in full later in this opinion. First, Kihyat pursued a claim against the driver (tortfeasor) of the pickup truck that caused Dane’s death. The driver of the pickup truck possessed $100,000 in liability insurance with Allstate Insurance Company (Allstate), and Kihyat obtained a settlement for the policy limit of $100,000.
¶ 4. After filing the first wrongful-death claim against the driver’s (tortfeasor) insurance company, Allstate, the Administra-trix learned that David Sr. fathered two children with Kathy May Huber — David Eubanks Jr. and Allison Eubanks. The Estate then sought joinder by Huber as the natural mother and next friend of Dane’s two half-siblings, David Jr. and Allison. In September 2010, attorney Jane Perry entered an appearance in chancery court on behalf of Huber to represent the interests of David Jr. and Allison.
¶ 5. The chancellor approved the first wrongful-death settlement in the amount of $100,000, and divided the proceeds among all five wrongful-death beneficiaries — the Administratrix, Seth, Aiden, and David Sr.’s two children with Huber, David Jr. and Allison. The chancellor also awarded attorneys’ fees to Kihyat as provided for in his court-approved contract with the Administratrix. We acknowledge that this $100,000 settlement, and the related attorneys’ fees, are not contested in the present appeal.
¶ 6. Next, Kihyat, on behalf of the Ad-ministratrix, presented a separate claim to Allstate for uninsured-motorist benefits under the insurance policy of Dane’s stepfather, Kenneth Borries. Allstate responded by filing a declaratory-judgment action against Dane’s estate and the Ad-ministratrix in the Ünited States District Court for the Southern District of Mississippi. ' Due to complexity of the issues, Kihyat associated with attorney Vincent Castigliola to defend the suit against the estate and the Administratrix. Both parties participated in a settlement conference in August 2010, resulting in Allstate agreeing to a settlement of $250,000, subject to chancery court approval.
¶ 7. After a series of attempts by Kihyat and Castigliola, on behalf, of the Adminis-tratrix, to exclude David Jr. and Allison from recovering in any of the $250,000 Allstate settlement proceeds, as set forth *881 in further detail below, the chancellor issued a judgment distributing the settlement proceeds equally between the wrongful-death beneficiaries: the Administratrix, Seth, Aiden, David Jr., and Allison. The chancellor also awarded the attorneys a fee based on forty percent of the settlement proceeds distributed to each of the beneficiaries, again including the Adminis-' tratrix and the unrepresented heirs, David Jr. and Allison.
¶ 8. Huber, guardian and parent of minors David Jr. and Allison, now appeals the chancellor’s award of attorneys’ fees from the ’Allstate' settlement proceeds awarded to David Jr. and Allison, because the Administratrix and the attorneys pursued legal claims adverse to the miiiors and because the Administratrix and her attorneys proceeded without the informed consent of the unrepresented heirs.[1] Finding error, we reverse the judgment and remand for further proceedings consistent with this opinion;
FACTS
¶ 9. On February 28, 2006, sixteen-year-old Dane was killed in a single-vehicle car accident. As stated, in February 2007, the Administratrix, Dane’s mother, petitioned to probate Dane’s estate in chancery court, and the chancellor named her administra-trix. On January 13, 2007, the Adminis-tratrix retained attorney Kihyet to pursue a wrongful-death lawsuit, arising from the death of her son, against Allstate, the insurer of the driver at fault in the accident causing Dane’s death. The Administratrix entered into a contingency-fee contract with Kihyat, which provided for a forty percent fee from any recovery obtained for the Administratrix.
¶ 10. During the course of asserting the first wrongful-death claim against Allstate, the Administratrix and her counsel discovered the existence of David Jr. and Allison as wrongful-death beneficiaries and sought joinder by Huber, on behalf of David Jr. and Allison. Prior to this time, the Ad-ministratrix was' unaware that her ex-husband and Dane’s father, David Sr., had two children, David Jr. and Allison, with Huber. As a result, on December 12, 2008, Huber, the mother of David Jr. and Allison, joined the Administratrix’s Petition for Probate of Estate, Appointment of Ad-ministratrix, Issuance of Letters of Administration, and Determination of Heirship, on behalf of her minor children. Kihyet subsequently negotiated a wrongful-death settlement in' the amount of $100,000 with Allstaté on behalf of the driver of the truck involved in the accident.
¶ 11. In September 2009, the Jackson County Chancery Court approved the $100,000 settlement with the truck driver’s insurer, Allstate, and ordered that proceeds be distributed equally among Dane’s adjudicated wrongful-death beneficiaries— the Administratrix; Seth (Dane’s brother); Dane’s two half-brothers, Aiden and David Jr.; and Dane’s half-sister, Allison.
¶ 12. Then, the Administratrix asserted a second claim for benefits arising from Dane’s death against her ex-husband Kenneth’s [2] Allstate Indemnity Company commercial-vehicle insurance policy. In response, Allstate, filed a complaint for a declaratory judgment in the United States District Court for. the Southern District of Mississippi on December 10, 2008, alleging that Kenneth’s Allstate policy .at issue failed to cover Dane, the decedent, as an *882 insured. As acknowledged, due to the complexity of the issues, the Administra-trix and Kihyat then sought the assistance of Attorney Castigliola to defend both Dane’s estate and the Administratrix against Allstate’s complaint for the declaratory judgment and to also pursue a counterclaim against Allstate for uninsured-motorist coverage for Dane. On January 12, 2009, Kihyat and Castigliola then filed an answer to Allstate’s complaint and also asserted a counterclaim alleging that Allstate had wrongfully denied coverage, and seeking recovery of $2.9 million in damages. However, the record shows the Ad-ministratrix provided no notice to, and received no informed consent from, David Jr. and Allison in the decision to retain Cas-tigliola to assist in the federal court proceedings.
¶ 18. Huber claimed that during the first wrongful-death settlement (against the tortfeasor), “once the attorneys identified [David Jr. and Allison] as potential beneficiaries, the attorneys brought [Huber] into the litigation and never advised her that she should retain independent counsel.” However, during the process of negotiating the $250,000 Allstaté insurance settlement stemming from the wrongful-death claim against Borries’s insurer, the record shows that the Administratrix changed positions, and then attempted to exclude David Jr. and Allison from receiving any proceeds.
¶ 14. On August 17, 2010, the district court ordered a settlement conference between Allstate and the Administratrix, at which the parties agreed to settle the matter for $250,000, subject to subsequent approval by the Jackson County Chancery Court. The record shows that during the federal court settlement-conference proceedings, Castigliola and Kihyat attempted to exclude David Jr. and Allison as heirs of Dane’s estate and reduce their share of the proceeds. Specifically, the Administratrix and her attorneys asserted that the present settlement pertained only to claims pursued by Dane’s estate, rather than a settlement of wrongful-death claims. The Administratrix and her counsel asserted that David Jr. and Allison were adjudicated wrongful-death beneficiaries and that as wrongful-death beneficiaries, they would inherit on equal footing. However, as heirs, under the applicable laws of descent and distribution, whole-blood heirs would inherit to the exclusion of David Jr. and Allison as half-bloods. The Administratrix and her counsel asserted that the settlement belonged to the estate and that as half-siblings of Dane, instead of whole-blood heirs, statutory law of descent and distribution excluded them from receiving any proceeds from Dane’s estate, and hence from the settlement. See Miss.Code Ann. § 91-1-5[3] (Rev.2013) (whole-blood heirs shall inherit to the exclusion of half-blood heirs of the same degree); Miss. Code Ann. § 11-7-13 (Supp.2013) (no such distinction is made for purposes of distribution of wrongful-death proceeds). A June 1, 2010 federal court order reflects efforts by the Administratrix to exclude David Jr. and Allison from participating in the settlement for the second wrongful-death claim in federal court.
¶ 15. On August 26, 2010, prior to presenting the federal court settlement to the chancellor for approval, Castigliola and Kihyat petitioned for the appointment of a guardian ad litem (GAL) to represent the interests of the minor heirs. Castigliola *883 and Kihyat informed the court that the attorneys would divide the previously approved forty percent contingency fee between them.
¶ 16. A few days after petitioning the chancery court to appoint a GAL for David Jr. and Allison, on September 3, 2010, the chancellor issued an order approving the forty percent contingency fee for Castiglio-la and Kihyat and also appointing a GAL, Kelly Dees, for all the minor heirs. The chancellor instructed the GAL to investigate the proposed wrongful-death settlement and file a report recommending to the chancellor whether the proposed settlement would serve the best interests of the minor children. Prior to approval and distribution of the settlement in chancery court, Jane Harris-Perry, who had previously appeared as an attorney for the guardianships of minors David Jr. and Allison in chancery court, filed an entry of appearance in chancery court, dated September 1, 2010, on behalf of Huber, as the mother and next friend of David Jr. and Allison.
¶ 17. On October 15, 2010, the Adminis-tratrix filed a petition in chancery court for authority to settle the claim, with notice to the GAL and Harris-Perry. At a hearing held on October 20, 2010, the chancellor expressed concern over a possible conflict regarding the Administratrix’s potential request for the unequal division of the approved settlement proceeds among the wrongful-death beneficiaries, and she ordered the appointment of a second GAL, Matthew Lott.
¶ 18. On November 16, 2010, the chancellor held a hearing on the Administra-trix’s petition for authority to settle the claim. Due to confusion as to whether the $250,000 Allstate settlement constituted the settlement of a wrongful-death claim or proceeds of the Estate,' and whether David Jr. and Allison, as half-bloods, could share in the settlement proceeds on equal footing, the chancellor requested that counsel for the Administratrix seek clarification by the federal court as to the terms of the August 2010 settlement conference. Per the chancellor’s request, on , November 23, 2010, Kihyat and Castigliola .filed a motion to clarify in federal district court, seeking for the court to clarify that the Allstate settlement constituted settlement of a claim by the Estate, rather than a wrongful-death claim.
¶ 19. . In response, the district court issued an order on June 1, 2011, wherein the district court judge clarified that during the August 2010 settlement conference:
[T]he parties agreed that any issues regarding the half-siblings[’] participation in any settlement proceeds would be determined by the chancery court.
[[Image here]]
The [c]ourt finds there was a valid meeting of the minds that Allstate agreed to pay $250,000 to the Estate for the settlement of all of the claims by the Estate[,] which included a later division by the Estate to the five adjudicated heirs and wrongful death beneficiaries.
The district court ultimately expressed that “how the proceeds are divided within the Estate is left to be determined by the chancery court.” The district court further acknowledged that “in the course of the settlement conference [prior to the settlement,] ... [Administratrix] expressed concern over the equity of the potential distribution of any settlement proceeds” and explained that the Adminis-tratrix’s counsel “expressed that the recovery by [David Jr. and Allison] was inequitable.!’ Significantly, the record reflects no legal representation of David Jr. and Allison in federal court regarding the motion to clarify, filed by the Administratrix, Also, Huber’s brief provides that the federal court denied her request to intervene *884 on behalf of David Jr. and Allison in the second federal court action. In its August 9, 2011 order denying Huber’s motion to intervene, the' federal court held Huber failed to timely file her motion, explaining that Huber-filed her motion to intervene on May 31, 2011, nine months after the federal court entered its August 17, 2010 order dismissing the'wrongful-death claim based on the $250,000 settlement with Allstate. The federal court also determined that Huber would suffer no harm or prejudice by the denial 'of the motion to intervene, as the interests of David Jr. and Allison were represented by the Estate and the Administratrix.
¶20. Also in November 2010, the Ad-ministratrix and her counsel filed motions in chancery court attempting to exclude David Jr. and Allison from participating in the Allstate settlement. The Administra-trix, through Kihyat and Castigliola, filed a petition in chancery court asserting that David Jr. and Allison were the illegitimate children of David Sr., Dane’s father. The Administratrix, though her counsel, also claimed that David Jr.’s and Allison’s paternity had not been established, and that the court’s prior order determining David Jr. and Allison were Dane’s heirs and wrongful-death beneficiaries was invalid. The Administratrix also argued that David Jr. and Allison’s loss of society and companionship arising from Dane’s death was less significant than that of the other heirs. The Administratrix asserted that Dane’s biological father had engaged in virtually no contact with Dane in the last twelve years, and that as a result, Dane' had experienced little to no contact with David Jr. and Allison. In response, on behalf of David Jr. and Allison, the GAL presented the chancellor with birth certificates for David Jr. and Allison, which listed David Sr., as the father of both children, and thereby established paternity.[4]
¶ 21. On July 21, 2011; GAL Lott filed his report stating that
it would be difficult to assign any compensation to [Kihyat] since he admittedly was not representing either [David Jr.]‘ or [Allison] and was not- rendering services from them[;] rather, he used his legal services' to attempt to prevent them from benefitting from the services he did in fact render'solely for the [Ad-ministratrix]. '
The GAL concluded that “no express or implied contract existed between [Kihyat] and [David Jr. and Allison]” regarding the $250,000 Allstate settlement, and thus “it is completely implausible that [Kihyat] could reasonably believe that [David Jr. and Allison] should compensate him for his services rendered.” In so doing, the GAL found that Kihyat and Castigliola failed to establish entitlement to the fee from David Jr. and Allison on a quantum meruit theory of recovery.
¶ 22. On September 26, 2011, the chancellor denied the Administratrix’s requests to prevent David Jr. and Allison from sharing in the settlement of the second wrongful-death claim. At the settlement hearing in chancery court on October 14, 2011, the chancellor heard testimony from the attorneys submitting that Castigliola alone expended in excess of 750 hours and spent over $8,000 in out-of-pocket expenses in the federal court settlement proceeding. In her appellate brief, the Administratrix clarified that this work performed by Castigliola and Kihyat was limited to the defense of the federal court declaratory-judgment action filed by Allstate and the pursuit of the counterclaim and settlement, and this amount did not reflect any work done in subsequent chan- *885 eery proceedings. However, the record fails to reflect whether this amount included time and costs, incurred when representing the Administratrix in filing the motion to clarify in federal court, pursuant to the chancellor’s request, or in the attempts to exclude David Jr. and Allison from recovering -in regard to the settlement proceeds.[5]
¶ 23. On November 22, 2011, the chancellor approved the federal court Allstate settlement and ordered that the settlement proceeds be distributed equally among the wrongful-death ■ beneficiaries, ■ including David Jr. and Allison. However, contradicting the GAL’s recommendation, the chancellor ordered that forty percent of the total settlement be paid to Castigliola and Kihyat as a fee, stating that this fee would come from the settlement distributions of each of the heirs.
¶ 24. On Décember 11, 2011, Huber, as guardian and parent of minors David Jr. and Allison, appealed the chancellor’s judgment awarding Castigliola and Kihyat fees to be distributed equally from the settlement shares of David Jr. and Allison. On December 30, 2011, the Administratrix filed a cross-appeal, taking issue with the part of chancellor’s judgment ordering that the proceeds of the settlement be divided equally between the .wrongful-death beneficiaries. This appeal followed.
STANDARD OF REVIEW
¶ 25. “A chancery court’s interpretation and application of the law are reviewed de novo.” In re Guardianship of Duckett, 991 So.2d 1165, 1173 (¶ 15) (Miss. 2008) (citing Weissinger v. Simpson, 861 So.2d 984, 987 (¶ 11) (Miss.2003)). Upon appellate review, this Court will not reverse the chancellor’s decision unless it was manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Hill v. Southeastern Floor Covering Co., 596 So.2d 874, 877 (Miss.1992); see also Willing v. Estate of Benz, 958 So.2d 1240, 1246 (¶ 10) (Miss.Ct.App.2007).
¶ 26. Relevant to the issue in this case, we acknowledge that “an executor may not take inconsistent positions which would be detrimental to .the heirs on the one hand and beneficial to himself on the other.” In re Last Will and Testament of Chambers, 458 So.2d 691, 693 (Miss.1984); see also Miss.Code Ann. 11-7-13; Willing, 958 So.2d at 1257-58 (¶ 50) (chancery court approval required for attorneys’ fees awarded from a minor’s proceeds). An award of attorneys’ fees must be supported by substantial credible evidence. Stokes v. Campbell, 794 So.2d 1045, 1048 (¶ 13) (Miss.Ct.App.2001).
DISCUSSION
¶ 27. Hubei’, on behalf of David Jr. and Allison, argues that the chancellor erred in awarding attorneys’ fees to Cas-tigliola and Kihyat from the settlement distribution to David Jr. and Allison. Huber claims that Castigliola and Kihyat failed to enter into a contingency-fee .contract with- David Jr. and Allison, and thus the attorneys cannot recover attorneys’ fees from David Jr. and Allison based on *886 the Administratrix’s contingency-fee contract. Huber additionally asserts that Castigliola and Kihyat lacked entitlement to recover attorneys’ fees under the theory of quantum meruit[6] due to the attorneys’ conflicts of interests in pursuing legal claims adverse to the interests of David Jr. and Allison, including attempting to prevent David Jr. and Allison from obtaining any of the 2010 federal court Allstate settlement proceeds. As discussed, the $250,000 settlement from Kenneth’s Allstate insurance policy resulted from a' declaratory-judgment action filed by Allstate in federal court, which was followed by the Administratrix’s counterclaim. During the August 2010 federal' court settlement-conference proceedings, the record reflects that Castigliola and Kihyat pursued matters against David Jr. and Allison’s best interests by attempting to exclude David Jr. and Allison from sharing in the settlement proceeds.
¶ 28. With respect to retention of legal counsel and payment of attorneys’ fees in wrongful death actions, in Willing, 958 So.2d at 1256 (¶ 44) (citing Long v. McKinney, 897 So.2d 160, 176 (¶¶ 68-69) (Miss.2004)), this Court explained that .a wrongful-death beneficiary possesses
an affirmative duty to “provide reasonable notice (i) to all other wrongful death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed.” ... Additionally, “full disclosure is required of any agreement or arrangement for the payment of costs or attorney’s fees from the portion of recovery attributable to those receiving ■ such notice.” The personal representative and/or one or more of the beneficiaries may join the litigation represented by separate counsel; In this event, “the portion of recovery attributable to such claimants shall not be subject to such agreement or arrangement, absent written consent after full disclosure.” Under these circumstances the trial judge has discretion, upon petition by the personal representative or any beneficiary, to “equitably adjust and allocate fees among the attorneys based on the quantitative and qualitative contribution of each to the case.”
(Internal citations omitted). Additionally, precedent provides that “an attorney who successfully prosecutes a wrongful death claim without representing all of the heirs must prove that he has earned a fee from the proceeds distributed to all of the heirs.” Franklin v. Franklin, 858 So.2d 110, 123 (¶ 46) (Miss.2003) (citing Pannell v. Guess, 671 So.2d 1310, 1315 (Miss.1996)). As acknowledged previously, the law also requires an award of attorneys’ fees to be based on substantial credible evidence. Stokes, 794 So.2d at 1048 (¶ 13).[7]
¶ 29. Regarding attorneys’ fees, the chancellor herein cited Long for the proposition that “full disclosure is required .[to other wrongful-death beneficiaries regarding] any agreement or arrangement for the payment of costs or attorney’s fees from the portion of recovery attributable *887 to those receiving such notice.” Long, 897 So.2d at 176 (¶ 69).. The chancellor continued that “it is clear from'the evidence that [this] procedure [was] not followed ... with regard to the [settlement].” The chancellor provided that although, the Ad-, ministratrix asserted that the $250,000 settlement against Kenneth’s insurance policy with Allstate involved claims made by the Estate, and not claims- of wrongful death, the federal court ruled differently.
¶ 30. The chancellor also stated:
Only the attorneys for [Administratrix] and the Estate contributed to the acquisition of settlement proceeds. Although their contributions were later tarnished by taking positions adverse to the half-blood children Allison, David [Jr.], and Aiden, the court finds the sums obtained from Allstate would not have occurred but for their efforts.
This analysis lacks an accounting and explanation of the amount of time and related legal costs spent pursuing. claims adverse to David Jr. and Allison in reaching the $250,000 Allstate settlement of the second wrongful-death claim. The record fails to explain whether the attorneys charged the Estate with costs incurred in federal court related to the motion to clarify-
¶ 31. On October 14, 2011, during the chancery court settlement hearing, the chancellor indeed heard testimony from the attorneys regarding their hours and expenses exerted working on the- Allstate settlement proceedings in federal court. Kegarding the attorneys’ testimony as to their work and the efforts put forth to obtain the settlement, the chancellor, observed:
Castigliola [estimates that] he- had approximately 755 hours and $8,052.02 in expenses in the case. [Kihyat] testified that he spent an average of 3. to 5 hours a week on the ease and estimated his total hours would- have been between 500 and 700. Each attorney has practiced law for over thirty years and typically charges a $200 hourly fee which is commensurate with fees charged by other attorneys in the area with their knowledge and expertise. However, [Kihyat] testified that he originally only charged [the Administratrix] $150 an hour.
[[Image here]]
The aforementioned fees and figures computed together result in attorneys’ fees in the amount of $151,000 for [Cas- ■ tigliola] and $75,000 for [Kihyat] and excludes the $8,052.02 in expenses. Based on these figures, it is, evident that • quantum meruit based on the hourly fees and expenses of the attorneys would be $226,000 and would greatly exceed the 40% contingency fee contract of $140,000.
¶32. The record reflects that at this same hearing, Castigliola testified that' “all of the time I have figured, the 755 hours ... was all in regard to pursuing the claim against Allstate and resisting an action that would' have eliminated any recovery for anybody under this policy.” The record fails to account for attorneys’ time and legal costs incurred in the federal court negotiations ánd August' 2010 1 settlement conference when attempting to exclude David Jr. and Allison from receiving settlement proceeds and benefits. The record further reflects no deduction for legal costs incurred related to the motion to clarify in federal court. As acknowledged, the chancellor requested that counsel for the Administratrix file a motion to clarify in federal court to establish whether the $250,000 settlement constituted a settlement of a wrongful-death claim or a claim by the Estate, as well as whether David Jr. and Allison, as half-bloods, could participate in the settlement proceeds, stating, *888 “I think that is something that [the] federal court is going to have to decide.”
¶ 33. In pursuing the second wrongful-death claim and defending the federal court action, the Administratrix and her counsel claimed that the settlement constituted a claim by the Estate, and .not a wrongful-death claim, in an attempt to exclude David Jr. and Allison from sharing in the settlement or Estate as half-blood heirs. Stated differently, by claiming that the settlement belonged to the Estate, the Administratrix thereby attempted to exclude David Jr. and Allison from participating in the settlement proceeds under Mississippi’s laws of descent and distribution. See Miss.Code Ann. § 11-7-13; Willing, 958 So.2d at 1257-58 (¶50) (chancery court approval required for attorneys’ fees awarded from a minor’s proceeds). We recognize that with regard to attorneys’ fees, “[w]here minors are involved, the courts must [n]ecessarily determine the fees[.]” Sunnyland Contracting Co. v. Davis, 221 Miss. 744, 756, 75 So.2d 638, 639 (1964). Additionally, the attorneys’ fees must be reasonably- necessary and fair. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). Statutory law and jurisprudence provide guidance in determining the issues before us, explaining the chancellor’s duty to determine fees when minors are involved, and approval by the chancellor of attorneys’ fees in wrongful-death actions.
- If 34. In In re Wilhite, 121 So.3d at 305 (¶ 9), this Court held an attorney possessed no reasonable expectation of compensation for a majority of the work hours billed in the case. Pertinent to the issues raised herein, in Wilhite, this -Court reviewed the requirements of quantum merit recovery, methods of binding minors to a settlement, and the requirement -that an attorney representing less than all beneficiaries prove entitlement to compensation. (Id. at ¶ 11). This Court expressed that the attorney could only charge the minors for compensation for the work actually benefitting the minors. Id. Such determination constitutes the crux of the issue before us now in the instant case.
¶ 35; In determining this issue, the Wil-hite Court'fírst reviewed the four essential elements to recovery under a quantum merit claim as follows:
(1) valuable services were rendered or materials furnished;
(2) for the person sought to be charged;
(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
(4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.
Id. at (¶ 9) (citing Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 514-15 (¶ 56) (Miss.2007)). The Wilhite Court acknowledged that “[qjuantum meruit recovery is a contract remedy which may be premised either on express or implied contract, and a prerequisite to establishing grounds for quantum meruit recovery is [the] claimant’s reasonable expectation of compensation.” Id. at (¶ 9) (citation omitted).[8]
*889 ¶ 36. In addition to evaluating the elements of quantum meruit recovery, the Wilhite .Court also addressed the three ways to bind a minor to a settlement:
(1) removal of the disability of minority, (2) the formal appointment of a guardian, and (3) the chancery court’s approval, without a guardianship, when the claim is worth $25,000 or less (Mississippi Code Annotated section 93-13-211 (Supp.2012)).
Id. at (¶ 11) (citing Miss. State Bar Ass’n v. Moyo, 525 So.2d 1289, 1293-96 (Miss.1988)); see also UCCR 6.12 (written petition must outline work done).! ; -
¶ 37. Significant to whether a minor can be bound to a settlement, this Court in Wilhite identified the following regarding the protection of the interests of minors by the chancellor:
Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian-'for all persons under such disability. This inherent and traditional power and protective duty is made complete and irre-fragable by the provisions of our present state constitution. It is not: competent for the Legislature- to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and[/]or the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents!;] and in general will, and must take all necessary steps to conserve and protect the best interest,of these wards of the court. The court will not and cannot-permit the rights of an infant to be prejudiced by a waiver, or omission or neglect or design of a guardian, or of any other person, so far as.within the .power of the court to .prevent or correct. . All persons who deal with guardians or with courts in respect to the rights of infants are . charged with the knowledge of the above principles, and act to. the contrary thereof at their peril.
Id. at (¶ 11) (quoting Carpenter v. Berry, 58 So.3d 1158, 1163 (¶ 19) (Miss.2011)).
¶ 38. The Wilhite Court acknowledged that in protecting the interests 'and rights of minors, the court will also look to precedent with respect to an award of attorneys’ fees. Id. at (¶ 11). As set forth in the well-established precedent of McKee, 418 So.2d at 767, attorneys’ fees should only be in such an amount to compensate for services, rendered for legal- work .that was reasonably necessary and in an amount that is. just and fair to all.[9] In In re Guardianship Estate of Baker, 31 So.3d 1285, 1288-89 (¶ 13) (Miss.Ct.App.2010), this Court explained:
When looking to' determine the equitable division of attorney’s fees, [we look] to Rule 1.5(a) of the Mississippi Rules of Professional Conduct, which provides that “a lawyer’s fee shall be reasonable.” Rule 1.5(a) sets out several factors to be *890 considered in determining reasonableness:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.
¶ 39. Acknowledging the attempts of the Administratrix to exclude David Jr. and Allison from the $250,000 Allstate settlement proceeds from the second wrongful-death claim, the chancellor expressed in her judgment:
Even if the court were to discount the attorneys’ hourly rates to $125[,] ... based on its displeasure over the attorneys having taken an adverse position to the half-blood minor children, the total fees would still be $156,875. The court finds in light of these calculations that although none of the minor children were bound by the contingency fee contract, the fee imposed therefrom is reasonable and more beneficial to the children than a quantum meruit based calculation.
In so doing, the chancellor relied on case law allowing attorneys’ fees based on quantum meruit where beneficial to the unrepresented heirs. The present case differs from the facts of Franklin, 858 So.2d at 123 (¶ 46), and Pannell, 671 So.2d at 1315, the legal authority relied upon by the chancellor, since in Franklin and Pan-nell, the Administratrix pursued no claims adverse to those unrepresented heirs. Also, unlike the unrepresented hairs in Pannell, in the instant case, David Jr. and Allison displayed no acquiescence to the legal representation obtained by the Administratrix. Pannell, 671 So.2d at 1315. The chancellor herein ordered that the $250,000 Allstate settlement proceeds be distributed equally to the wrongful-death beneficiaries, without requiring Kihyat and Castigliola to prove any entitlement to the fee from David Jr. and Allison or requiring that the attorneys deduct the time they spent in federal court negotiations regarding the settlement attempting to exclude David Jr. and Allison from participating in the settlement.
¶ 40. The chancellor then ordered that attorneys’ fees in the amount of $100,000, based on the contingency fee, be paid to Kihyat and Castigliola. We acknowledge that in Pannell, 671 So.2d at 1315, the supreme court held that the attorney, who failed to enter into a contingency-fee agreement with all of the beneficiaries, was entitled to attorneys’ fees so long as he could prove his right to compensation from the non-client beneficiaries. After the chancellor in Pannell determined that the deceased’s half-siblings were entitled to share in an insurance settlement the attorney achieved on behalf of the deceased’s parents, the attorney, on behalf of the parents, attempted to exclude the deceased’s half-siblings from sharing in the settlement.[10] Id. at 1312. The supreme *891 court in Pannell determined that since the half-siblings acquiesced to the-representation and. settlement amount obtained therein, gained a financial benefit from the settlement negotiated by the attorney, and gained a financial benefit from the attorney’s labor,' then the chancellor should have allowed the attorney to prove he was entitled to some compensation from the half-siblings for his work in negotiating the settlement. Id. The supreme court stated:
On remand, the reasonableness of the contingency fee should be examined in light of the facts of this . case. In the event the fee is found to be unreasonable, the chancellor may consider restructuring the percentage of recovery to which [the attorney] is entitled under these circumstances. However, the chancellor may consider all factors normally utilized to determine a reasonable fee, and if he should find that the contingency fee was not reasonable under the facts of this case, then he may assess a fee based on quantum meruit.
¶ 41. In contrast to Pannell, in the case at bar, neither David Jr. or Allison, or their guardian and parent, Huber, acquiesced to representation by Kihyat or Castigliola or the legal strategies pursued regarding the federal court motion to clarify. Also, no informed consent was provided, either, as affirmatively required by precedent. See Long, 897 So.2d at 176 (¶ 69). Moreover, the law “will not ... permit the rights of a [minor] to be prejudiced by ... waiver, omission or neglect or design of a guardian, or of any other person, so far as within the power of the court[.]” Carpenter, 58 So.3d at 1163 (¶ 19).
¶ 42. In the district court’s Juñe 1, 2011 order responding to the Administratrix’s motion to clarify, the district court judge acknowledged that “in the course of the settlement conference [prior to the settlement,] ... [the Administratrix] expressed concern over the equity of the potential distribution of any 'settlement proceeds” and explained that the Administratrix’s counsel “expressed that the recovery , by [David Jr. and Allison] was inequitable.” The federal court order reflects that the Administratrix pursued legal claims adverse to David Jr. and Allison wherein the order acknowledges that during the August 2010 settlement conference and related negotiations, the Administratrix first took the position that the counterclaim against Allstate failed to constitute a wrongful-death action, but rather constituted an action by and on behalf of the Estate. Such a position would have excluded David Jr. and Allison from participating in the Estate, and hence the settlement, as half-bloods under Mississippi’s inheritance laws.[11] The chancellor’s findings regarding the attorneys’ fees assessed against David Jr. and Allison to reflect that they benefitted from all of the costs assessed against them and fail to show that the costs were reasonably necessary. Precedent requires that the chancellor determine fees acquiesced against minors. See McKee, 418 So.2d at 767, Sunnyland Contracting Co., 221 Miss, at 756, 75 So.2d at 639; Wilhite, 121 So.3d at 305 (¶ 11). The record fails to show Kihyat and Cas-tigliola possessed any reasonable expectation of compensation from David Jr. and Allison for costs incurred trying to exclude them from participating in the settlement.
*892 ¶43. The chancellor’s November 22, 2011 judgment failed to acknowledge that Castigliola and Kihyat, on behalf of the Administratrix, took* position adverse.to David Jr. and Allison in federal court. Thus, the chancellor’s judgment included no accounting for costs incurred pursing such matters in the federal court action. The chancellor indeed acknowledged in her judgment that the Administratrix, Kihyat, and Castigliola filed several motions in the chancery court attempting to exclude David Jr. and Allison from recovering any of the settlement proceeds. With respect to those costs arising from chancery court proceedings, the chancellor heard testimor ny from Castigliola explaining that the hours and expenses submitted to the chancellor indeed excluded time spent in chancery court pursuing claims adverse to David Jr. and Allison. Accordingly, the chancellor, after deducting the hours incurred in chancery court pursuing claims adverse to David Jr., and Allison, determined that the contingency fee agreed upon by the attorneys and the Administra-trix, which amounted to a fee less than one based on quantum meruit, was reasonable based on the circumstances. However, in so finding, the chancellor deducted no legal costs incurred by the attorneys herein in pursuing claims and positions in federal court during the second wrongful-death claim, related negotiations, and the federal court motion to clarify in an attempt to exclude David Jr, and Allison froto sharing in the $250,000 Allstate settlement proceeds.
¶ 44. We thus find the chancellor herein failed to set forth sufficient findings to distinguish the hours Castigliola and Kih-yat (the Administratrix’s counsel) incurred pursuing matters adverse to David Jr. and Allison in the federal court action and related settlement negotiations when attempting to exclude them from the $250,000 Allstate insurance settlement. Therefore, the record and the chancellor’s related findings failed to provide sufficient support for the attorneys’s fees assessed against David Jr. and Allison. Castigliola and Kihyat claim that the hours incurred in' chancery court pursuing claims contrary to David Jr.’s and Allison’s interests were excluded from the hours reflected in the fee award, but precedent nonetheless requires that counsel representing less than all beneficiaries must prove entitlement to the fee from the unrepresented beneficiaries. See Long, 897 So.2d at 176, 178-79 (¶¶ 69, 82). Further, precedent reflects that the personal representative or beneficiary possesses a right to petition for a review of the work performed by all counsel and for a more equitable distribution of attorneys’ fees. Id. In addition to the requirements to establishing recovery of a fee under quantum meruit, the chancellor must ensure any fee assessed against the settlement of a minor reflects legal work reasonably and necessarily incurred for the minor’s benefit and the fairness of the fee. See McKee, 418 So.2d at 767; Sunnyland Contracting Co., 221 Miss, at 756, 75 So.2d at 639.[12] The record and related findings fail to support or provide such a determination in the instant case.
¶ 45. Here, a reasonable expectation of compensation for costs of the legal work pursued contrary to David Jr. and Allison’s interests requires more'than asserting such expectation simply because other work performed by these attorneys bene-fitted David Jr. and Allison. Also, in this case, no evidence in the record supports a finding that David Jr. and Allison, the *893 unrepresented beneficiaries, acquiesced to legal strategies employed against their interests. Such a basis for compensation falls short of the- showing required by quantum meruit recovery, particularly against unrepresented minors, where the record shows no notice, informed consent, or acquiescence on behalf of David Jr. and Allison. See Wilhite, 121 So.3d at 305 (¶ 11). As previously stated, the supreme court, in McKee, 418 So.2d at 767, set forth that fees should only be in such an amount to compensate for services rendered and should be reasonably necessary.[13] Jurisprudence requires the chancellor to determine that the costs were fair, reasonable, and necessary, and that the costs benefit-ted the minors. Kihyat and Castigliola also should be held to meet the established standard in proving entitlement to a fee, particularly for the legal costs incurred in the federal court proceedings, since the chancery-court-proceeding costs were already deducted.
¶ 46. We therefore reverse the chancellor’s judgment in part wherein the judgment awards Kihyat and Castigliola a forty percent contingency fee to be paid by David Jr. and Allison from their proceeds of the settlement. We remand for further proceedings for the chancellor to determine entitlement to the claimed fee and to provide express findings in support thereof. Any award should be also supported by findings sufficiently distinguishing the legal costs incurred by Castigliola and Kih-yat in pursuing legal- matters adverse to David Jr. and Allison in the federal court action relating to the Allstate settlement of the second wrongful-death claim.
¶ 47. As to the remaining issue raised by the Administratrix in her counterclaim, the distribution of the settlement proceeds, in the chancellor’s November 2011 judgment approving the settlement, she opined that “since the [Allstate] settlement was to include all claims of the heirs and wrongful-death beneficiaries, the proceeds should be divided equally pursuant to the wrongful death statute, Mississippi] Code Annotated] [section] 11-7-13.” The chancellor cited the statute, explaining that “any attempt by the court to divide the settlement unequally.... would remove this matter from the purview of the chancery court, as such matters are ‘as the jury may determine.’ ”
¶48. We recognize-that “[a] settlement payment by an insurance company is to be considered fob the -benefit of all beneficiaries entitled to share in the recovery under the wrongful death statute.” See Jeffrey Jackson & Mary Miller, 3 Encyclopedia of Mississippi Law § 77:22 (2001) (citing Parnell, 671 So.2d 1310). If the deceased has no spouse or children, then the wrongful-death statute makes clear that damages will be equally divided between the deceased’s father, mother, sisters, and brothers living at the time of his death. , See id., at § 77:18; see also .Miss, Code Ann. § 11-7-13 (with respect to priority of beneficiaries within the same class, no distinction exists between kindred of whole or half-blood). We thus affirm the chancellor’s judgment ordering that the settlement proceeds should ■ be divided equally among the wrongful death beneficiaries. See Parnell, 671 So.2d at 1314 (“[T]he wrongful death statute does not provide that the lower court may conduct a hearing to determine how to divide. the proceeds.”). In so doing, we observe that the cases cited by the dissent herein re *894 garding the cross-appeal fail to apply to the facts of this case.[14] Further, these cases do not involve a settlement of insurance proceeds, a distribution of settlement proceeds, or Mississippi’s wrongful-death Statute.
¶49. Based on the foregoing, we reverse and remand to the chancery court for a determination of the attorneys’ entitlement to the fee, since the record fails to contain evidence showing that Kihyat and Castigliola proved entitlement to the fee awarded from David Jr. and Allison’s distribution, and for the chancery court to provide sufficient, detailed factual “findings to aid and enable appellate review. See Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 289 (Miss.1987); M.R.C.P 52(b).
¶ 50. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE/CROSS-APPELLANT.
BARNES, ISHEE AND JAMES, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ROBERTS, J., • CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., MAXWELL AND FAIR, JJ.; GRIFFIS, P.J., JOINS IN PART. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. But see Long v. McKinney, 897 So.2d 160, 176 (¶ 69) (Miss.2004).

. The .record reflects that although Kenneth and the Administratrix divorced in 2000,. Kenneth continued to maintain a close relationship with his stepson, Dane..

. Mississippi Code Annotated section 91-1-5 states the following regarding the distribution of an estate: "There shall not be, in any case, a distinction between the kindred of the whole and half-blood, except that the kindred of the whole-blood, in equal degree, shall be preferred to the kindred of the half-blood in the same degree.”

. See Miss,Code Ann. § 93-9-28 (paternity and birth certificates),

. As explained, counsel for the Administratrix filed the motion-to clarify in federal court pursuant to the chancellor’s order following the November 16, 2010 hearing on the Ad-ministratrix’s petition for the authority to settle. The chancellor requested that counsel for the Administratrix file a motion to clarify in federal court to establish whether the $250,000 settlement constituted a settlement of a wrongful-death cláim or a claim by the Estate, as well as whether David Jr. and Allison, as half-bloods, could participate in the settlement proceeds, stating "I think that is something that [the] federal court is going to have to decide.”

. Although the chancellor awarded the attorneys' fees based on the contingency fee, we recognize that "[a] chancellor's decision as to attorney's fees in quantum meruit is reviewed only for an abuse of discretion; it will not be disturbed on appeal if it is supported by substantial evidence.” In re Wilhite, 121 So.3d 301, 305 (¶ 9) (Miss.Ct.App.2013) (citing Ownby v. Prisock, 243 Miss. 203, 208, 138 So.2d 279, 281 (1962)).

. We further acknowledge that the Mississippi Supreme Court found an award of attorney’s fees and an executors’ fee shocking where a co-executor defended a suit brought by devi-sees to bring certain property back into the estate that had been deeded to the co-executor prior to the testatrix’s death. Chambers, 458 So.2d at 693; see abo Estate of Ratliff, 395 So.2d 956, 957 (Miss.1981).

. For example, see Pannell v. Guess, 671 So.2d at 1315, wherein the half-siblings acquiesced to the settlement amount, gained a financial beiiéfit from the settlement negotiated by the. attorney, and gained a financial benefit from the attorney’s labor, resulting in the supreme court’s ruling that the chancellor . should have allowed the attorney to prove he was entitled to some compensation from the hálf-siblings for his work in negotiating the settlement.

. In McKee, 418 So.2d at 767, our supreme court explained that an attorneys’ fee
depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney ém-ployed, the nature of the case and- novelty and difficulty of the questions at issue," as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

. "At the ... hearing, all six of [the deceased’s] wrongful death beneficiaries agreed to settle the wrongful death claim against [the tortfeasor] for the $150,000 that was being held in the registry of the court. However, at that same hearing, [the deceased’s parents] *891 then took the position that [the deceased's] half-siblings ([the father’s children by his previous marriage) were not entitled to any of the proceeds.” Pannell, 671 So.2d at 1312.

. See Miss.Code Ann. § 91-1-5 (whole-blood ' heirs shall inherit to the exclusion of half-blood heirs of the same degree); Miss.Code Ann. § 11-7-13 (no such distinction is made for purposes of distribution of wrongful-death proceeds).

. In approving settlements involving minors and awarding attorneys’ fees therein, the chancellor must ensure that the work was reasonably necessary to further the minor's interests. Willing, 958 So.2d at 1257-58 (¶ 50).

. See Wilhite, 121 So.3d at 305 (¶ 9) (no reasonable expectation of compensation by claimant’s attorney and only a portion of the attorney fee hours, 12.9 out of 125 hours, related to matters benefitting the minor); see also In re Guardianship of Baker, 31 So.3d at 1288-89 (¶ 13).

. The dissent cites McClendon v. Mississippi Highway Commission, 205 Miss. 71, 78, 38 So.2d 325, 327 (1949), and Derr Plantation Inc. v. Swarek, 14 So.3d 711, 718 (¶ 16) (Miss.2009).