THOMPSON, Judge.
This is an appeal from a judgment distributing the assets of an estate. In 1974, John Whigham left his estate to 22 named nieces and nephews, subject to the life estate of his wife. Pursuant to the terms of John Whigham’s will, 4 of the remain-dermen were given a power of sale over the real estate at the death of John Whig-ham’s widow, and they were to sell all of the property and disburse the proceeds to the beneficiaries named in the will. John Whigham’s widow lived for 20 years after his death, however, and at her death, only 10 of the named nieces and nephews were still living, and only 2 of the heirs remained living that were vested with the power of sale over the real estate. Further, in their administration of the estate, the 2 heirs with the power of sale refused to recognize the interests of the children of the deceased nieces and nephews, and one of them planned to sell the property to himself for the sum of $350,000. When the children of two of the deceased nieces and nephews learned of this plan, they retained an attorney, Henry Steagall III, to file an intervention on their behalf to protect their interests.
The original intervenors who retained Steagall consisted of 5 descendants of deceased nieces and nephews named in the will. Boyd Whigham, one of the excluded heirs who did not retain counsel, was given notice by Steagall of the petition to intervene, and of the date of the trial. Thereafter, the trial court defined the intervenors as all of the heirs of the deceased nieces and nephews named in the will of John Whigham and noted in open court that Steagall was representing the interests of all of these heirs. During the trial proceedings, Steagall, acting on behalf of the intervenors, sought the inclusion of all the excluded heirs in the estate, sought a forced sale of the property at a public auction, and objected to claims against the estate made by one of the heirs with the power of sale. The trial court ruled in favor of the intervenors on all of these issues.
Following the trial, Steagall applied for an award of an attorney fee pursuant to the “common-fund” doctrine and supported his application with the affidavits of two local attorneys experienced in estate and probate matters. The trial court held a hearing on Steagall’s application; Boyd Whigham was given notice of the hearing, and he attended the hearing and testified. Following the hearing, the trial court awarded a ^ fee from the intervenors’ shares. Fees were also awarded to the guardian ad litem who had represented an incompetent heir and to the attorneys who had represented the living nieces and nephews. Thereafter, several post-judgment motions were filed, including a motion for “reconsideration” filed by Boyd Whigham; several of the excluded heirs wrote letters to the trial court evidencing their intent to join Boyd Whigham’s motion for reconsideration. After conducting a hearing, during which testimony was taken, the trial court entered a final judgment. In its judgment, the trial court upheld its award of attorney fees, with the exception of the portion of the attorney fee to Steagall that it had ordered paid by the heirs who had originally retained him.[1]
Boyd Whigham appealed to the supreme court, raising the sole issue of the propriety of the attorney fee awarded to Steagall pursuant to the common-fund doctrine. The supreme court transferred the appeal *971 to this court, pursuant to Ala.Code 1975, § 12-2-7(6). On the face of his notice of appeal, Whigham purports to appeal on behalf both of himself and of “any heirs of the Estate of John Whigham similarly situated.” A review of the record reflects that eight other heirs, Roger Guilford, Rita Clair Richards, Hazel Sprewell, Don Guil-ford, Linda Hultgren, Gregory Guilford, C.D. Whigham, and Robin Musser wrote notices to the trial court clerk advising her that they intended to join Whigham’s appeal. These notices met the minimum requirements of Rule 3(c), Ala. R.App. P. Further, all of these notices were filed within 42 days of the trial court’s final judgment; therefore, pursuant to Rule 4(a)(2), these notices were timely notices of appeal. No other documents have been filed by these eight additional heirs, so we conclude that these parties are relying exclusively on Boyd Whigham to raise the pertinent issues on appeal. During the pendency of this appeal, Boyd Whigham filed a motion to determine the parties to the appeal, to stay the distribution of the estate assets to those heirs who noticed the trial clerk of their intention to join in the appeal, and to stay the requirement of posting a supersedeas bond; this court denied that motion on December 21, 1999.
Initially, we note:
“ ‘The general rule in Alabama is that attorney fees can be awarded only when “authorized by statute, when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney created a fund out of which fees can be paid.” ’ ”
Lyons v. GEICO Ins. Co., 689 So.2d 182, 183-84 (Ala.Civ.App.1997)(quoting International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 166 (Ala.1989)). “[T]he ‘common fund’ doctrine is an equitable principle designed to compensate an attorney whose services on behalf of his client operated to create,, discover, increase, preserve or protect a fund to which others may also have a claim.” Henley & Clarke v. Blue Cross-Blue Shield, 434 So.2d 274, 276 (Ala.Civ.App.1983) (citing 7A C.J.S. Attorney & Client § 334). This doctrine has traditionally been applied in certain limited areas, such as for the protection of a decedent’s estate, situations where the actions of one creditor benefit other creditors, and actions brought by shareholders for corporate waste and the recovery of corporate property. Id. In CNA Insurance Companies v. Johnson Galleries of Opelika, Inc., our supreme court provided the following explanation of the application of the common-fund doctrine:
“The ‘common fund’ doctrine is an exception to the general rule that attorney fees are not recoverable.... However, if the attorney is simply acting on behalf of his or her client, and a benefit only incidentally comes to others, the attorney is not entitled to a fee from those receiving the incidental benefit. In this regard, a benefit can be an incidental, rather than an intended, result of an attorney’s efforts, if the relationship between the attorney and the ‘nonclient’ person receiving the benefit is an adversarial one.”
639 So.2d 1355, 1359 (Ala.1994)(internal citations omitted).
Boyd Whigham contends that, because Steagall represented only a portion of the estate, and not the estate as a whole, this doctrine is inapplicable. We are not persuaded by this argument. Boyd Whigham and the other appellants were children of the nieces and nephews of John Whigham who were deceased at the conclusion of the life estate of John Whig-ham’s widow. The surviving heirs who were vested with the power of sale pursuant to the terms of John Whigham’s will *972 had incorrectly determined that the bequests to the deceased nieces and nephews had lapsed. Therefore, Boyd Whigham and the other appellants would have been completely and wrongfully excluded from taking under the will had Steagall not intervened on their behalf. In no way was Steagall’s representation adversarial to Whigham’s interests or to the interests of the other excluded heirs. Cf. Jernigan v. Jernigan, 678 So.2d 1169 (Ala.Civ.App. 1996).
At least two requirements must be met in order for the common-fund doctrine to apply. There must be a fund from which to compensate the attorney, and the attorney’s services must benefit that fund. Henley & Clarke, 434 So.2d at 276. Stea-gall successfully protected the bequests made to his clients and, in the process, was able to protect the bequests to Boyd Whig-ham and the other excluded heirs. Further, he successfully petitioned the court to order a public auction of the land in the estate, obtaining a much higher price than would have been obtained if the beneficiary had followed through with his plan to sell the property to himself. We conclude that Steagall created a fund out of which a fee could be awarded and that his efforts significantly benefited the fund.
Finally Whigham argues that the fee awarded is excessive or unreasonable. In support of this argument, Whigham points to the disparity between the amount of the fee awarded to the attorneys probating the estate and the amount of the fee the trial court awarded to Steagall. Whig-ham further points to Steagall’s petition for a sale for division, which requested a 10% fee. It is difficult to comprehend the relevance of these matters to Whigham’s argument pertaining to the reasonableness of the attorney fee awarded pursuant to the common-fund doctrine. In this portion of his argument, Wdiigham concludes that the trial court should have apportioned, among all of the excluded heirs, the attorney fee that the “client” heirs negotiated in their fee arrangement with Steagall. We disagree. In Steagall’s application for attorney fees, he averred:
“The litigation was lengthy and complex as it involved quasi trusts, future interest's, the vesting of the interests of re-maindermen and other extraordinary probate and real property issues. Several difficult and complex briefs were written and complete success was gained by Intervenors on all issues, including the right of the issue of the deceased nieces and nephews to inherit their parent’s interest in the estate and the protection of the estate from an improper private sale for the inadequate sum of $350,000.” “
Citing the appropriate authority, Steagall petitioned the trial court to award him a fee based on the common-fund doctrine. Steagall’s petition for attorney fees was supported by two affidavits of experienced attorneys in the area, recommending a fee in the amount of $ of the interest of the heirs who benefited from his representation. Steagall’s petition was further supported by an itemized statement of the services he had rendered and the time he had expended on each service. According to the statement, Steagall spent a total of 152.5 hours representing the excluded heirs of John Wdngham’s estate.
Following a hearing on Steagall’s petition, at which testimony was taken, the trial court entered an order awarding Steagall an attorney fee in the amount of 56 of the interests of the children of the deceased beneficiaries named in John Whig-ham’s will. Boyd Whigham filed a motion captioned as a “motion for reconsideration”; in this motion he contended that the private-fee arrangement his relatives had made with Steagall when they retained *973 him should be honored. Steagall filed a motion in opposition to this motion, in which he stated in part:
“In the beginning, the Class was to be excluded and receive nothing from the sale of the Whigham estate. Only a few members of the class even knew that the Whigham estate existed. The efforts of the undersigned attorney did benefit the class ..., in that such efforts brought their interests from $0 to a fa interest in the estate (per share) with a gross value each of approximately $20,500 (based on the intended private sale to Billy Black-mon for $350,000), thus creating a common fund for the Class to share in the amount of $164,000.”
In its final judgment, the trial court ratified the award of Steagall’s attorney fee, with the exception of that portion of the fee charged against the individuals who had initially retained him. The trial court reduced the fee that those persons were directed to pay to $15,000, the amount of retainer plus the hourly rate of $100 that they had originally agreed upon with Stea-gall. As to Boyd Whigham’s contention that the an attorney fee in the amount of of the shares of the excluded heirs who did not have a fee agreement with Steagall was excessive and therefore an abuse of discretion, we find a case handed down by the United States Court of Appeals for the 11th Circuit to be instructive. In Camden I Condominium Association, Inc. v. Dunkle, 946 F.2d 768 (11th Cir.1991), the court stated that the majority of common-fund fee awards range between 20% and 30% and held that the trial court is vested with a large degree of discretion in making these awards.
We find no error in the trial court’s fee award to Steagall. The trial court’s judgment is affirmed.
AFFIRMED.
MONROE, J., concurs.
ROBERTSON, P.J., and YATES, J., concur in the result.
CRAWLEY, J., recuses himself.

. These heirs presented evidence that they had agreed to pay Steagall an initial retainer fee of $1,500 plus an hourly rate of $100, and the trial court reduced their share of Stea-gall’s attorney fee to this amount.