# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01274-SCT

*IN THE MATTER OF THE ESTATE OF DANE
RICHARD EUBANKS, DECEASED: CECILIA
EUBANKS, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF DANE
RICHARD EUBANKS, DECEASED*

*v.*

*KATHY MAY HUBER, AS PARENT AND LEGAL
GUARDIAN FOR AND ON BEHALF OF DAVID
RANDALL*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2015 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| TRIAL COURT ATTORNEYS: | MYLES ETHAN SHARP |
| | BRENT M. BICKHAM |
| | DAVID ELIAS KIHYET |
| | VINCENT J. CASTIGLIOLA, JR. |
| | KELLY PENDERGRASS HUNTER |
| | MATTHEW STEPHEN LOTT |
| | TREVOR BRUCE ROCKSTAD |
| | RYAN JOSEPH CANON |
| | H. BENJAMIN MULLEN |
| | JANE PATRICIA HARRIS PERRY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | H. BENJAMIN MULLEN |
| | VINCENT J. CASTIGLIOLA, JR. |
| ATTORNEY FOR APPELLEE: | TREVOR BRUCE ROCKSTAD |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 08/23/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     In the first iteration of this case, the chancery court examined the principles underlying *quantum meruit* and found that Vincent Castigliola and David Kiyhet, attorneys for the estate of Dane Eubanks, should be awarded attorneys' fees from two minors out of a settlement they, and only they, obtained. After remand from this Court, the chancery court, for the second time, heard arguments as to whether Castigliola and Kiyhet should be awarded attorneys' fees from the two minors based on *quantum meruit* out of the settlement they obtained. The remand required that the chancery court make specific findings of fact. This time, again without making any findings of fact and without any contradictory evidence being introduced, the chancery court reversed course and found that the factors for *quantum meruit* were not met. Because the chancery court failed to follow remand instructions by failing to make findings of fact, and, because no contradictory evidence was adduced suggesting the factors for *quantum meruit* were suddenly not met, this Court reverses and remands the case for a further determination of attorneys' fees.

## FACTS AND PROCEDURAL HISTORY

¶2.     This case returns to this Court after a remand to the trial court regarding the determination of attorneys' fees. In 2006, sixteen-year-old Dane Eubanks was killed in an automobile accident. He was survived by his father, David Eubanks,[1] his mother, Cecilia Eubanks, his brother Seth Eubanks, his maternal half-brother, Aiden Borries, and his paternal half-siblings, Allison Eubanks and David Eubanks Jr. He was also survived by his former stepfather, Kenny Borries, the father of Aiden. His mother, Cecilia Eubanks, signed a

---

[1]David had little to no contact with Dane, and, during these lawsuits, his parental rights were terminated and he was not a party to any of the litigation.

2

contingency-fee contract with attorney David Kihyet to file a wrongful-death suit. She then filed petitions to probate and to approve the contingency fee contract in the Chancery Court of Jackson County, which were approved. The court appointed Cecilia as administratrix.

¶3. Cecilia pursued a wrongful death claim against the driver of the vehicle in which Dane was a passenger. Allstate Insurance Company ("Allstate"), the insurer of the driver, offered to settle the case for $100,000, the bodily injury limits of the insured's policy. Cecilia filed a complaint to settle the wrongful death claim and to determine the heirs and wrongful death beneficiaries, which Kathy Huber, the mother of Allison and David Jr., joined. The chancery court approved the settlement, named Cecilia, Seth, Aiden, Allison, and David Jr. as the sole heirs and wrongful death beneficiaries, and ordered that the settlement proceeds be distributed equally.[2]

¶4. Meanwhile, Cecilia filed an uninsured-motorist claim under Kenny Borries's commercial-vehicle insurance policy with Allstate, arguing that Dane was a "foster child" under that policy. Allstate filed an action for a declaratory judgment in the United States District Court for the Southern District of Mississippi, asking the court to declare that no uninsured motorist coverage existed for Dane under Borries's Allstate policy. The Estate and Cecilia filed a counterclaim arguing that Dane was covered by Borries's policy and that he was entitled to uninsured/underinsured motorist insurance coverage. It noted that "[t]he injuries suffered by Dane Eubanks in the collision in issue resulted in compensable damages

---

[2]This settlement was for bodily injury to the decedent and is not subject to this appeal. However, the subsequent federal court litigation and settlement at issue in this appeal clearly flow from the $100,000 settlement and the allegations that it does not fully compensate for the damages incurred.

for pain, suffering, mental anguish, medical expenses, funeral expenses, loss of future earnings and other damages." Because of the complexity of the federal court litigation, Kihyet associated Vincent Castigliola Jr. as cocounsel.

¶5. The parties held a settlement conference, at which they agreed to settle the claims for $250,000. Kihyet and Castigliola endeavored to maximize the settlement during the conference. Indeed, Allstate represented in federal court that Kihyet and Castigliola refused to settle for a lesser amount for the specific reason that the settlement would have to be split five ways. At the end of the settlement conference, Kihyet and Castigliola indicated to Allstate that they believed that Allison and David Jr. should not share in the settlement. The parties then agreed to allow the chancery court to give final approval to the settlement and to decide any issues surrounding which individuals were entitled to share in the settlement proceeds.

¶6. In the chancery court, the Estate and Cecilia maintained that the federal court settlement was for a contract claim and thus enured to the benefit of the Estate, and, accordingly, should be distributed to the heirs of the Estate, *not* the wrongful death beneficiaries. The Estate and Cecilia argued that Allison and David Jr., as half-siblings, were not heirs under Mississippi law, but conceded that they were wrongful death beneficiaries. Cecilia and the Estate sought clarification from the federal court regarding what claims the federal court case and settlement encompassed. Huber moved to intervene in the motion to clarify, but the district court denied the motion, finding that her children's interests were already represented. The federal court found that there was a valid meeting of the minds to

4

settle "all of the claims by the Estate which included a later division by the Estate to the five adjudicated heirs and wrongful death beneficiaries." It further found that "how the proceeds are divided within the Estate is left to be determined by the Chancery Court."

¶7.    The chancery court then divided the settlement equally among Cecilia, Seth, Aiden, Allison, and David Jr. The chancery court determined that "since the settlement was to include all claims of the heirs and wrongful death beneficiaries, the proceeds should be divided equally pursuant to the Wrongful Death Statute." The chancery court also awarded attorneys' fees to Kihyet and Castigliola in the amount of their contingency fee of forty percent. It noted that the facts and issues were very close to those found in ***Pannell v. Guess***, 671 So. 2d 1310 (Miss. 1996). The court found that "*only* the attorneys for Cecilia and the Estate contributed to the acquisition of settlement proceeds." It further found that "the sums obtained from Allstate would not have occurred but for their efforts." It determined that, while Allison and David Jr. were not bound by the contingency fee contract, they benefitted from the attorneys' work on the settlement. Based on *quantum meruit*, the court calculated that attorneys' fees would amount to $226,000, for which Allison and David Jr. would be responsible for one-fifth each, two-fifths total. It calculated that, even if it discounted the attorneys' hourly rates due to their later having taken an adverse position to Allison and David Jr., *quantum meruit* would still result in total fees of $156,875. If the court held Allison and David Jr. to the forty percent contingency fee, the overall award of attorneys' fees for the entire settlement (including the earlier $100,000 settlement) was $140,000, which would render the portion Allison and David Jr. were to pay as $28,000 each, or $56,000 total.

5

Thus, it ruled that "in light of these calculations that although none of the minor children were bound by the contingency fee contract, the fee imposed therefrom is reasonable and more beneficial to the children than a *quantum meruit* based calculation." Based on the $250,000 settlement, the court then awarded attorneys' fees in the amount of $100,000, with Allison and David Jr. paying their equal shares of that. Huber appealed the award of attorneys' fees against Allison and David Jr., and Cecilia and the Estate cross-appealed, arguing that the chancellor erred by dividing the settlement equally among the wrongful-death beneficiaries.

¶8. The Court of Appeals affirmed the chancery court's decision to divide the settlement equally among the wrongful-death beneficiaries. *Estate of Eubanks v. Eubanks*, 197 So. 3d 878, 893-94 (Miss. Ct. App. 2014) ("*Eubanks I*"). The Court of Appeals also analyzed the attorneys' fee issue in detail, reversing the chancery court judgment and remanding

> for further proceedings for the chancellor to determine entitlement to the claimed fee and to provide express findings in support thereof. Any award should also be supported by findings sufficiently distinguishing the legal costs incurred by Castigliola and Kihyat in pursuing legal matters adverse to David Jr. and Allison in the federal court action relating to the Allstate settlement of the second wrongful-death claim.

*Id.* at 893. The Court of Appeals determined that the trial court's findings lacked "an accounting and explanation of the amount of time and related legal costs spent pursuing claims adverse to David Jr. and Allison in reaching the $250,000 Allstate settlement of the second wrongful-death claim. The record fails to explain whether the attorneys charged the Estate with costs incurred in federal court related to the motion to clarify." *Id.* at 887. It emphasized that "[t]he record fails to account for attorneys' time and legal costs incurred in

6

the federal court negotiations and August 2010 settlement conference when attempting to exclude David Jr. and Allison from receiving settlement proceeds and benefits. The record further reflects no deduction for legal costs incurred related to the motion to clarify in federal court." *Id.* Citing caselaw, the Court of Appeals noted that an "attorney could only charge the minors for compensation for the work actually benefitting the minors." *Id.* at 888. It determined that "[s]uch determination constitutes the crux of the issue before us now in the instant case." *Id.* The Court of Appeals concluded that

> We thus find the chancellor herein failed to set forth sufficient findings to distinguish the hours Castigliola and Kihyat (the Administratrix's counsel) incurred pursuing matters adverse to David Jr. and Allison in the federal court action and related settlement negotiations when attempting to exclude them from the $250,000 Allstate insurance settlement. Therefore, the record and the chancellor's related findings failed to provide sufficient support for the attorneys' fees assessed against David Jr. and Allison.

*Id.* at 892. It held that "[j]urisprudence requires the chancellor to determine that the costs were fair, reasonable, and necessary, and that the costs benefitted the minors. Kihyat and Castigliola also should be held to meet the established standard in proving entitlement to a fee, particularly for the legal costs incurred in the federal court proceedings, since the chancery-court-proceeding costs were already deducted." *Id.* at 893.

¶9.	The Estate filed a petition for writ of certiorari with this Court, arguing that Court of Appeals decision was in error. We granted certiorari, and affirmed the Court of Appeals' judgment on the issue of the division of the settlement proceeds. ***Estate of Eubanks v. Eubanks***, 197 So. 3d 861 (Miss. 2015) ("***Eubanks II***"). Regarding the attorneys' fees, "because a majority of justices have not voted to reverse the Court of Appeals, its opinion

7

and holding on this issue for this case must stand." *Id.* at 871. Four justices opined that the elements of *quantum meruit* were not met. Four justices opined that *quantum meruit* was warranted, but would remand the case to the trial court for it to deduct any attorneys' fees incurred in pursuing positions adverse to Allison and David Jr.

¶10. On remand, Castigliola and Kihyet introduced the same evidence they had introduced at the last hearing on attorneys' fees, and additionally detailed the hours they spent adverse to Allison and David Jr. At the conclusion of the hearing on the issue, the court noted that "it's unfair that these siblings collected a nice amount of money based on your work." In a two and a half page order, the court summarily found that "insufficient evidence was offered to show that the quantum meruit factors have been met." Again, the court did not make any detailed findings of facts. The Estate appealed to this Court. It argues that the trial court erred by failing to make detailed findings of fact, that the trial court erred in finding the *quantum meruit* factors were not met, and that the trial court erred in not considering the right to a fee for recovery of a common fund.

## ANALYSIS

### 1. Standard of Review

¶11. The chancery court's determinations on questions of law are reviewed de novo. *In re Estate of Baumgarnder*, 82 So. 3d 592, 598 (Miss. 2012). The chancery court's findings of fact that are supported by substantial evidence will be reversed only if the chancellor abused her discretion, was manifestly wrong, her findings were clearly erroneous, or she applied an erroneous legal standard. *Id.* "The standard of review regarding attorneys' fees

8

is the abuse of discretion standard, and such awards must be supported by credible evidence."

*Mabus v. Mabus*, 910 So. 2d 486, 492 (Miss. 2005) (quoting *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002)).

*2. Quantum Meruit*

¶12.    On remand, without making detailed findings as explicitly instructed by the Court of Appeals, the chancellor found that the *quantum meruit* factors were not met with regard to Allison and David Jr.[3]  The chancery court gave no indication as to *why* or on what grounds it found the *quantum meruit* factors were not met.  *See Tricon Metals & Servs., Inc. v. Topp*, 516 So. 2d 236, 238-39 (Miss. 1987).  The failure to make specific findings of fact in this case, especially after an explicit instruction to do so, is an abuse of discretion.  *Id.* at 239.  This is especially true when the chancery court appeared to earlier find that the *quantum meruit* factors *were* met, and then, without explanation or findings, simply reversed course.

¶13.    The dissent claims that the chancery court was ordered only to make findings if it granted attorneys' fees.  Yet, the Court of Appeals ordered the chancery court to make findings regarding its determination.  It did not limit the requirement of findings only to a determination if the chancery court found for one of the parties, but not the other.  The Court of Appeals stated: "we reverse and remand to the chancery court for a determination of the attorneys' entitlement to the fee . . . and for the chancery court to provide sufficient, detailed

---

[3]It is undisputed that David Jr. never even met Dane, as he had not yet been born when Dane passed away.  It appears that Allison, who was one year old at the time of Dane's death and who lived with the same father who was found by the chancery court to not have been involved in Dane's life, had little-to-no involvement with Dane.  Yet, these children, through their mother, seek monetary compensation for Dane's death.

factual findings to aid and enable appellate review." ***Eubanks II***, 197 So. 3d at 894.

Notably, the Court of Appeals did not state that factual findings would not aid and enable

appellate review if the chancery court found that *quantum meruit* existed; and indeed, in this

exact situation, factual findings would aid and enable our appellate review. Regarding its

mandate, the Court of Appeals cited Mississippi Rule of Civil Procedure 52(b) and ***Topp***.

Rule 52(b) states that "[u]pon motion of a party . . . or upon its own initiative . . . , the court

may amend its findings or make additional findings and may amend the judgment

accordingly." Miss. R. Civ. P. 52(b). Rule 52(b) does not qualify that the findings should

only be made if the court finds for one party, but not for the other. Rule 52(a) states that in

actions without a jury "the court may, and shall upon the request of any party to the suit or

when required by these rules, find the facts specially and state separately its conclusions of

law thereon . . . ." Miss. R. Civ. P. 52(a). ***Topp*** cites Rule 52(a) and states that, while Rule

52(a) vests the trial court with discretion in making findings of fact and conclusions of law,

"[t]hat discretion . . . should be exercised soundly consistent with established principles

regarding the sound and efficient administration of justice. Trial and appellate courts have

separate institutional roles. Our role is that of an appellate court and not as triers of fact."

***Topp***, 516 So. 3d at 239. It noted that this Court strives "mightily to respect limitations upon

our role where appeals are taken regarding issues of fact. The process breaks down,

however, where the trial court sitting without a jury does not independently make findings

of fact." ***Id.*** We emphasized that "[a]s a practical matter, we can better perform our function

if we know what the trial court did, and why." ***Id.*** The Court concluded that "in cases of any

significant complexity the word 'may' in Rule 52(a) should be construed to read 'generally should.' In other words, in cases of any complexity, tried upon the facts without a jury, the Court generally should find the facts specially and state its conclusions of law thereon." *Id.* Nothing in the Court of Appeals' mandate, Rule 52, or *Topp* limits the direction to trial courts to make findings to a determination one way, but not the other; the dissent's claims that findings were mandated only if the trial court found for one party, but not the other, is belied by the Court of Appeals' mandate and the rules and caselaw – our law is not one-sided. Clearly, whether the trial court granted or rejected the claim for attorneys' fees, it should have made findings to support that conclusion and to aid and enable appellate review. It did not.

¶14. The attorneys' goal in settling the doubtful claim in this case was to maximize settlement for all, without regard to how that settlement would ultimately be distributed. Only after settlement was achieved did the attorneys attempt to exclude Allison and David Jr. As in *Pannell v. Guess*, after the settlement was made with the insurance company, the parents attempted to exclude the half-siblings from sharing in that settlement. *Pannell v. Guess*, 671 So. 2d 1310, 1312 (Miss. 1996). Then, the half-siblings "hired their own attorney to represent them in any *further matters* dealing with the *distribution* of the wrongful death proceeds." *Id.* (emphases added). The Court still remanded the case for a determination of whether the contingency fee in the contract not signed by the half-siblings was reasonable, since the half-siblings derived a benefit from the attorney's efforts and acquiesced to the settlement amount. *Id.* at 1315. It further found that if the chancellor "should find that the

11

contingency fee was not reasonable under the facts of this case, then he may assess a fee based on *quantum meruit*." **Id.**

¶15.    To prove the elements of *quantum meruit*, a party must show:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified [the] person sought to be charged that [the party], in performing such services, was expected to be paid by [the] person sought to be charged.

***Tupelo Redevelopment Agency v. Gray Corp., Inc.***, 972 So. 2d 495, 514-15 (Miss. 2007) (internal quotations omitted).

¶16.    Certainly, in the case at hand, Kiyhet and Castigliola should not receive any payment from Allison and David Jr. for their work on how to distribute the proceeds of the settlement, as, in this regard, they worked against the interests of Allison and David Jr.  However, Kiyhet and Castigliola obtained the settlement for the benefit of all who were to share in it, which ultimately included Allison and David Jr.  Indeed, the federal court counterclaim stated that it was on behalf of the Estate and the wrongful death beneficiaries.[4]  Cecilia's deposition in that case indicated that she understood that the half-siblings would share in the recovery. Allstate represented that Kiyhat and Castigliola refused to settle for a smaller amount because of the five-way division of the settlement.  Even the federal court found that "there was a valid meeting of the minds that Allstate agreed to pay $250,000 to the Estate for the settlement of all of the claims by the Estate which included a later division by the Estate to

---

[4]The counterclaim was filed one month after Huber joined the chancery court case, and several months after all parties learned of the existence of Allison and David Jr.

12

the five adjudicated heirs and wrongful death beneficiaries." Thus, they provided valuable services for Allison and David Jr. And Allison and David Jr. derived benefit from the efforts of Kiyhet and Castigliola, and they explicitly acquiesced to the settlement amount.[5] They certainly accepted the money. Further, they had notice that Kiyhet and Castigliola expected to be paid from the settlement proceeds; indeed, they do not appear to complain about the attorneys' fees taken out of their portion of the first, $100,000 settlement. Thus, Kiyhet and Castigliola did perform services for Allison and David Jr., because they provided services to maximize the settlement for any and all who were to share in the proceeds, as explicitly recognized by the federal district court and Allstate. Only *after* the settlement was maximized to the benefit of all sharing in the proceeds[6] did Kiyhet and Castigliola take positions adverse to Allison and David Jr.[7] The chancery court appeared to be frustrated with the fact that Allison and David Jr., one of whom had no relationship to the deceased and the other who had little or no relationship with him, and neither of whom endeavored to spend the money to defend the suit from which this settlement arose, would reap the full financial benefit of the settlement without paying the attorneys who achieved that settlement for them.

---

[5]In Huber's Response to the Administratrix's Petition for Approval and Disbursement of Settlement Proceeds Arising from the Death of Dane Eubanks, Huber "respectfully ask[ed] that the Court approve the settlements associated with the death of Dane Eubanks."

[6]Even Huber admits in her brief that it was *after* obtaining the settlement that Kiyhet and Castigliola took positions adverse to Allison and David Jr.

[7]Indeed, in the federal court case, Allstate filed a suit against the Estate and the Cecilia, and Kiyhet and Castigliola defended the suit and counterclaimed. Allison and David Jr. did not endeavor to spend the money to help defend the affirmative suit by Allstate against the Estate.

13

Yet, it then simply reversed its course without contradictory evidence, and without findings it declared that *quantum meruit* was not met. It appears that the factors of *quantum meruit* were met; yet, the appellate courts are again faced with the proposition of reviewing the chancery court's decision on this issue without any specific findings of fact, despite the record indicating that the chancery court changed course without reviewing contradictory evidence and despite an explicit mandate from the Court of Appeals to make findings of fact on this issue to enable appellate review.

¶17. To be certain, attorneys' fees associated with the motion to clarify in federal court should be deducted if the chancellor finds that *quantum meruit* is met. However, Allison and David Jr. clearly derived a benefit from the settlement negotiations with Allstate pursuant to the federal court action. *See **Franklin v. Franklin ex rel. Phillips***, 858 So. 2d 110, 123 (Miss. 2003). During the settlement negotiations, the objective of Kiyhet and Castigliola was to maximize the monetary amount of the settlement. While they did raise concerns about Allison and David Jr. sharing in the settlement, Allstate refused to address those concerns and all parties agreed that the chancery court would decide the issue of the division of the settlement. Thus, only attorneys' fees and expenses incurred during and after the federal court settlement negotiations should be deducted from the calculation of Allison's and David Jr.'s equitable portion of those legal costs if the chancellor finds *quantum meruit* is met.

¶18. The chancery court abused its discretion by reversing course on the *quantum meruit* issue without the findings of fact it was specifically ordered to make. The factors of *quantum meruit* do appear from the record to be met in this case, and the chancery court must make

14

detailed findings on remand regarding its decision on *quantum meruit*, whether it decides the *quantum meruit* factors are met or are not met.

### 3. Common-Fund Doctrine

¶19.    Eubanks argues alternatively that Kiyhet and Castigliola are due attorneys' fees based on the common-fund doctrine. It appears the issue was raised briefly before the chancery court, but the chancery court did not address it; if the chancery court finds it appropriate to address the common fund doctrine on remand, it may.

**CONCLUSION**

¶20.    Because the chancery court again failed to make findings of fact to enable appellate review, and because the chancery court, without contradictory evidence or any explanation, reversed its determination in the first iteration of this case, this Court reverses the chancery court judgment and remands the case with specific instructions that the chancery court determine whether Allison and David Jr. should pay an equitable amount of attorneys' fees, and that the chancery court make specific and detailed findings of fact to support its decision, sufficient to enable appellate review. If the chancery court determines that attorneys' fees are warranted, it must be sure to disallow any fees connected to time spent contrary to the interests of Allison and David Jr.

¶21.    **REVERSED AND REMANDED.**

**WALLER, C.J., KITCHENS, P.J., AND BEAM, J., CONCUR; RANDOLPH, P.J., CONCURS WITH ANALYSIS IN PARTS 1 AND 2 AND IN RESULT. CHAMBERLIN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MAXWELL AND ISHEE, JJ., NOT PARTICIPATING.**

**CHAMBERLIN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶22. The chancery court erred in its conclusion that it was without authority to award attorneys' fees from Allison's and David Jr.'s portion of the second settlement. I agree with the majority that Kihyet and Castigliola "provided services to maximize the settlement for any and all who were to share in the proceeds. . . ." (Maj. Op. at ¶16). I also agree that the case should be remanded for the chancery court to clarify why its conclusion changed from the finding that *quantum meruit* was met under the facts of this case to the finding that *quantum meruit* was not met, as no contradictory evidence was entered at the hearing after the initial remand.[8] I write separately as I believe the common-fund doctrine should be applied by the chancery court.

¶23. On remand, it should be determined whether or not Kihyet and Castigliola are entitled to an award of attorneys' fees under the common-fund doctrine. "The common-fund doctrine 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'"[9] ***Yerby v. United***

---

[8] Justice Coleman correctly notes that this Court's previous remand was not binding on the chancellor, as the decision was a four-to-four split without precedential value. (Dis. Op. at ¶27).

[9] I recognize that the common-fund doctrine has had limited application outside of trust estates, class actions, and insurance subrogation proceeds. *See* Johnny Parker, *The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 31 Ind. L. Rev. 313, 322, 338 (1998) (defining the common-fund doctrine and concluding that "there is no logical reason to limit the doctrine to class actions and trust cases"). I can see no reason not to apply the doctrine here, as it need not be limited where it can accomplish its equitable purpose. ***Sprague v. Ticonic Nat'l Bank***, 307 U.S. 161, 167, 59 S. Ct. 777, 780, 83 L. Ed. 1184 (1939) ("[W]hen such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund . . . —hardly touch the power of equity in doing justice as between a party

16

*Healthcare Ins. Co.*, 846 So. 2d 179, 189–90 (Miss. 2002) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970))).

¶24.    It is undisputed that, but for the efforts of Kihyet and Castigliola, the parties would not have recovered the $250,000 settlement.  Further, Kihyet represented Cecilia Eubanks *and* the Estate of Dane Richard Eubanks, per the Order Approving Contract for Legal Fees.  Also, any adverse hours were *after* the settlement had been obtained.[10]  It also does not appear from the record that Kihyet and Castigliola requested any recovery for time spent after the settlement.[11]  Once Kihyet and Castigliola obtained the settlement and tendered it to the chancery court, they were due an award of attorneys' fees under the common-fund doctrine.  *See Franklin v. Franklin ex rel. Phillips*, 858 So. 2d 110, 123 (Miss. 2003) ("Precedent has

---

and the beneficiaries of his litigation.").  *See also **Whigham v. Estate of Whigham**, 781 So. 2d 969, 971–72 (Ala. Civ. App. 2000) (applying the common-fund doctrine in the estate context).

[10] As noted by the majority, Huber admits that Castigliola and Kihyet took positions adverse to Allison and David Jr. *after* obtaining the settlement in federal court.

[11] I agree with Justice King's majority, *certiorari* opinion "that the Court of Appeals may have overstated the amount of attorneys' fees that should be deducted."  **Estate of Eubanks v. Eubanks**, 197 So. 3d 861, 878 (Miss. 2015).  The record demonstrates that the number of hours spent by either attorney adverse to Allison's and David Jr.'s interests were minimal.  On remand, Castigliola testified that eight hours of his time spent during the settlement proceedings—to the extent that it could be considered adverse—could be deducted from the ultimate calculation of attorneys' fees from Allison and David Jr. Kihyet testified that only ten hours of his time were spent adverse to the minors.  Indeed, the time sheets that were entered in evidence in 2011 were labeled "Attorney Time Pre Aug 20 2010."  The time sheets do not reflect any entries for time spent after mid-August.  The motion to clarify in federal court, a filing agreed upon as adverse to Allison and David Jr., was not filed until more than two months later on November 23, 2010.

established that an attorney who does work that enhances the value of a settlement should be paid for his efforts . . . .").

¶25. The issue of Kihyet's and Castigliola's subsequent, possible conflicts of interest are tangential to their recovery of the fee. I would not condone any alleged, potential conflict of interest. Neither should the chancery court award any fee for time spent adverse to Allison and David Jr. However, as those conflicts are subsequent to the settlement, they are a dispute between Allison and David Jr. and Kihyet and Castigliola which should be settled in a different forum if Allison and David Jr. still are aggrieved after the chancery court's determination of a reasonable fee. The reasonableness of the fee, under this Court's precedent, is an issue to be determined by the chancery court. *See **Pannell v. Guess***, 671 So. 2d 1310, 1315 (Miss. 1996) (remanding to determine reasonableness of fee).[12]

¶26. I share the majority's concern that *quantum meruit* appears to be met by the evidence in the record, yet the chancery court found that *quantum meruit* was not met. As discussed by the majority, each element of *quantum meruit* appears to be supported from a review of the cold record.[13]

---

[12] The Court of Appeals' treatment of **Pannell** is unpersuasive. **Estate of Eubanks v. Eubanks**, 197 So. 3d 878, 890 (Miss. Ct. App. 2014). While the administratrix in **Pannell** may have pursued no claims adverse to the unrepresented heirs, the attorney who effectuated the settlement did pursue a claim directly adverse to the unrepresented heirs. **Pannell**, 671 So. 2d at 1312. This Court still allowed him later to prove entitlement to a fee from those same heirs, as they derived a benefit from the common settlement and had acquiesced in the amount. *Id*. at 1315. Here, Allison and David Jr. certainly benefitted from the settlement and voluntarily had recovered from the first wrongful-death settlement, evidencing some knowledge of and acquiescence in the proceedings.

[13] I reserve decision on whether or not the chancery court's determination that *quantum meruit* was not met—without detailed findings of fact for appellate review—was

18

¶27. For the foregoing reasons, I agree with the majority's decision to remand the case for further proceedings, reversing the chancery court's determination that it was without authority to award attorney's fees from Allison's and David Jr.'s portion of the second settlement. Further, I would instruct the chancery court to consider an award of attorneys' fees under the common-fund doctrine and agree with the majority that the chancery court should clarify why its decision as to *quantum meruit* changed without any intervening, contradictory evidence.

**RANDOLPH, P.J., JOINS THIS OPINION.**

**COLEMAN, JUSTICE, DISSENTING:**

¶28. If the Mississippi Supreme Court evenly splits the votes of its participating members in a case and issues a decision in which the votes are, as they were in the instant case, four-to-four on an issue, then the decision of the trial court – in the case of the previous remand of the case *sub judice* the Court of Appeals – stands. Other than serving as a functional affirmance as described above, any opinion issued by an evenly divided court has no value and places no mandate on the trial court during remand. Accordingly, the only mandate from an appellate court operational when the instant case was remanded following appeal was that issued by the Court of Appeals in its opinion. *See Estate of Eubanks v. Eubanks*, 197 So. 3d 878 (Miss. Ct. App. 2014) (*Eubanks I*). Contrary to the position taken by the majority, the chancellor did not violate the Court of Appeals' mandate when it reversed course and found that the elements of *quantum meruit* were not met. Moreover, given the standard of

___

an abuse of discretion, as the common-fund doctrine would be sufficient on remand.

19

review, the chancellor did not err in refusing to award a *quantum meruit* payment to attorneys who actively worked against the interests of the would-be payees. Accordingly, and with respect, I dissent.

**I.    The chancellor violated no mandate.**

¶29.    As the majority documents, after we granted *certiorari* to review the Court of Appeals' opinion in *Eubanks I*, we split evenly on the issue of whether the facts of the case warranted a *quantum meruit* award. As detailed in our *certiorari* opinion, the Court of Appeals' opinion on the issue therefore controlled. *Estate of Eubanks v. Eubanks*, 197 So. 3d 861, 871 (¶ 52) (Miss. 2015) (*Eubanks II*). After detailing several factual shortcomings in the record, the Court of Appeals wrote, "Such a basis for compensation *falls short of the showing required by quantum meruit recovery*, particularly against unrepresented minors, where the record shows no notice, informed consent, or acquiescence on behalf of David Jr. and Allison." *Eubanks I*, 197 So. 3d at 893 (¶ 45) (emphasis added). Later, the Court directed the chancellor, "We remand for further proceedings *for the chancellor to determine entitlement to the claimed fee* and to provide express findings in support thereof." *Id.* at 893 (¶ 46). The Court of Appeals' majority did not require the detailed factual findings the majority faults the chancellor for not providing, unless the chancellor awarded fees. The chancellor did not do so and, therefore, did not violate the applicable  mandate.

**II.    The chancellor did not err when, upon remand, she held that the attorneys who acted in direct conflict to the interests of the minors were not entitled to *quantum meruit* recovery.**

¶30. The Court "will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Estate of Johnson v. Johnson*, 237 So. 3d 698, 704 (¶ 14) (Miss. 2017) (citing *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (Miss. 2002)).

¶31. In her July 2015 Judgment, the chancellor acknowledged the above-discussed directive from the Court of Appeals, writing, "[T]he Court of Appeals instructed that in further proceedings the chancellor should determine entitlement to the claimed fee and to provide express findings in support thereof." She then found that "insufficient evidence was offered to show that the *quantum meruit* factors have been met." Although the majority and I disagree regarding whether the Court of Appeals' opinion required the chancellor to beef up her findings of fact should she find a *quantum meruit* award inappropriate, we have sufficient facts in the record to affirm her decision. I see no point in remanding the case to the chancellor when the record before us shows that she correctly decided the issue.

¶32. When we considered the instant matter after granting *certiorari* before, I joined the four members of the Court who would have held on appeal that the elements of *quantum meruit* were not met. *See* **Eubanks II**, 197 So. 3d at 870-871 (¶¶ 50-52). Specifically, we would have held that the attorneys could not prove the second element, that they rendered valuable services on behalf of the minors they sought to charge. *Id.* at 871 (¶ 50). On behalf of the four, Presiding Justice Dickinson wrote as follows:

> Here, the second element clearly was not satisfied. Castigliola and Kiyhet were retained to represent the estate and engaged in settlement negotiations on

21

behalf of the estate. What is more, Castigliola argued that he never represented David Jr. and Allison; he actively sought to preclude their recovery altogether of any portion of the settlements; he attempted to have the chancellor change her prior adjudication of beneficiaries and exclude David Jr. and Allison; and he worked to reduce the portion they finally obtained.

*Id.* at 871 (¶ 51). It remains true that the conflict of interest between the attorneys and the minors created by the attorneys' active litigation against the minors' interest and Castigliola's admission that he never represented the minors conclusively demonstrate that the services rendered by the attorneys were not on the minors' behalf. The doctrine of *quantum meruit*

applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*In re Estate of Fitzner*, 881 So. 2d 164, 174 (¶ 25) (Miss. 2003) (quoting *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986)). The Court should be loathe to hold that an attorney, whose actions toward a party in litigation would have constituted a serious ethical breach had the party in question actually been a client, should "in good conscience and justice" be paid by said party.